## Hixon's Appeal.

Argued April 14, 1941.

34

*C. W. Martin,* for appellant.

*E. J. McDaniel,* for appellee.

OPINION BY RHODES, J., June 30, 1941:

On September 9, 1940, Wilma Blaney Hixon filed a petition for a writ of habeas corpus to obtain the custody of her infant daughter, who was then nine and one-half months old, in which she alleged, among other things, that the child was then in the custody of her husband, Nelson Hixon. The writ was granted, and, on September 17, 1940, the court, after hearing, made the following order: "...... until further order of court the child shall remain in the custody of its father, Nelson Hixon, and to be kept by him and cared for where it now is by his sister-in-law, Mrs. Ruth Hixon, the mother of the child to have the right to visit the child in the home of Mrs. Ruth Hixon as often as she may care to do so." Exceptions to the order were dismissed, and this appeal by the wife followed.

In reviewing such proceedings our duty is prescribed by the Act of July 11, 1917, P. L. 817, §1, 12 PS §1874, which directs that we "shall consider the testimony and

make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong." See *Com. ex rel. v. Tweedy*, 74 Pa. Superior Ct. 577, 581; *Com. ex rel. Witte v. Witte*, 80 Pa. Superior Ct. 397, 399.

The governing criterion is, in all cases, the welfare and interest of the child. To this the rights of the parents and all other considerations are subordinated, and each case must be viewed in relation to the happiness, training, development and morals of the infant. The Act of June 26, 1895, P. L. 316, §2, 48 PS §92, which provides that in awarding custody of a child to a parent regard first shall be had to the fitness of the parent and the best interest and permanent welfare of the child, is declarative of the common law of this state. *Com. ex rel. Fortunes v. Manos*, 140 Pa. Superior Ct. 352, 354, 13 A. 2d 886.

The material facts requiring consideration in arriving at a conclusion upon the merits of this case are thus disclosed by the testimony: The parents of this child were married on August 2, 1938, and after the marriage they resided at the home of the husband's father, who is a farmer. There they lived together as husband and wife until August 28, 1940, the date of the separation. The wife is 27 years old; the husband is 34. He is a painter, and also works on his father's farm. He has an annual income of about $600. Prior to the marriage, the wife taught school for three years, and continued to teach for one year after the marriage. Their child, Barbara Ann, was born on November 19, 1939. The wife did not teach school that year, having a year's leave of absence in order to care for their infant daughter.

Husband and wife had a harmonious life together until the separation, which was caused by the desire of the wife to resume her teaching, and the opposition of

the husband to this move. Her desire to work was apparently occasioned by her belief or apprehension that the husband alone could not support the infant child and herself. She testified that she aided in furnishing the home, that she paid for their automobile and other expenses incurred, and that in order for her and the child to have sufficient maintenance and clothing it was necessary for her to teach after her one-year leave of absence had expired. She would have lost her position if she had failed to return to teach after her leave of absence. She further testified that if her husband had enough work she "would be glad to stay home and take care of the baby." On the other hand, the husband felt that her proper place was in the home taking care of their child, that he was able to support his wife and child in the proper manner, and that it would make him appear "cheap" if she taught school. He took the position that she had to choose between the home and the schoolroom. He testified that she could not teach school and live with him. They could not agree, and on August 28, 1940, the wife returned to the home of her parents, who lived on a farm two miles away.

As is usual in separation cases, the key to the separation lies in the conflicting points of view of the parties. Each expected of the other a degree of submission which neither yielded, and each measured the other's conduct in this respect by a standard which neither regarded as binding upon himself or herself.

On the day of the separation the wife did not take her child with her because, she says, she was unable to carry the child to the home of her parents. She returned for her child the next day. The child was then at the home of the husband's sister-in-law, Mrs. Ruth Hixon, who has a six-year-old daughter. The husband had arranged with his sister-in-law to care for the child. He would not allow the wife to take the child, and this habeas corpus proceeding followed.

The lower court decided the issue in favor of the father. We are not unmindful that the court below saw and heard the parties and their witnesses, but after a careful consideration of the testimony we have come to a different conclusion.

The parents of this child are respectable people, devoted to the child, and no doubt both made some honest effort to preserve the home and to promote the happiness of themselves and their child. All the parties involved are well-behaved, industrious, law-abiding people. The moral fitness of each of them is conceded.

The child is now in the home of Mrs. Ruth Hixon. She furnishes respondent his meals, but he sleeps at the home of his father, which is across the road from the Hixon home. Under this arrangement, considering the nature of respondent's work, he is in the same house with the child only a few hours a day.

Petitioner lives at the home of her parents, and has resumed her position as a school teacher at a salary of $1,400 a year. Her work permits her to be with the child each day from the late afternoon until 8 a.m. the next morning. She can sleep with her child or near it, and give it the attention a child about a year old requires. During the day the mother of petitioner, who has reared three daughters, can take care of the child. In addition to this, petitioner is at home from Friday night until Monday morning of each week, and during the summer months of each year. She can thus best nurture, rear, and educate her child. For the present, at least, the child's life with the mother will approximate normal to a greater degree than with the father. Considering the age and the sex of the child, under the circumstances of the case, her welfare and interest will be better served by committing her to the charge of her mother rather than to the custody of the father. "It has been the usual practise in Pennsylvania ever since the case of *Commonwealth v. Addicks*, 5 Binney 519,

where no reason appears to the contrary, to commit a child of tender years to its mother. ...... Ordinarily, the needs of a child of tender years are best served by the mother who, in the common experience of mankind, is better fitted to have the charge of it, although there are cases where the contrary appears": *Com. ex rel. Keller v. Keller,* 90 Pa. Superior Ct. 357, at page 359. See, also, *Com. ex rel. Stark v. Stark,* 94 Pa. Superior Ct. 86, 88; *Com. ex rel. Stack v. Stack,* 141 Pa. Superior Ct. 147, 153, 15 A. 2d 76.

After an examination of the testimony and the application of the principles hereinbefore stated, we are of the opinon that the best interests and welfare of the child require that custody be given to the mother, the petitioner. Respondent shall have the right to visit the child.

The order of the court below is reversed, and the record is remitted with instructions to enter an order awarding the custody of the child, Barbara Ann Hixon, to her mother, Wilma Blaney Hixon, subject to such regulations as may not be inconsistent with this opinion. Appellee to pay the costs.