Commonwealth ex rel. Martocello *v.* Martocello,
Appellant.

Argued October 23, 1941.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*William A. Gray,* for appellant.

*John Patrick Walsh,* for appellee.

OPINION BY STADTFELD, J., February 28, 1942:

This is an appeal from an order of the Domestic
Relations Division of the Municipal Court of Philadel-
phia awarding the relatrix-appellee the sum of $100
per week for her support.

Relatrix filed her petition on November 21, 1940, praying for the support of herself and her minor child. Three hearings were held before BONNIWELL, J., and on July 14, 1941, the aforesaid order was entered granting support to relatrix but not to the child since "there has been no delinquency on the part of the respondent in relation to his duty towards his minor son."

On December 6, 1940, appellant, through his counsel, agreed to pay to appellee the sum of $25 per week with the understanding that in the event an order for more than that amount were entered, the difference would be given to appellee from the date of the agreement to the date of the order.

The relatrix married appellant on April 22, 1929, and separated from him on September 2, 1940. Her stated reason for leaving her husband was his arrest for adultery.

Appellee testified that appellant is in the ice manufacturing and equipment business, trading in Philadelphia as Joseph A. Martocello & Company; that he is engaged in a similar business in Stroudsburg, Pennsylvania, (Stroudsburg Ice and Cold Storage Company), in Atlanta, Georgia, (Frigid Ice & Cold Storage Company) and in Hawley, Pennsylvania (Hawley Ice Company); and that he also operates the Pottstown Blower Company. Appellee testified that her husband owned the stock of the Stroudsburg and Atlanta companies, both of which are incorporated.

Appellant, according to his wife, owns the property at 229 and 231 North 13th Street, Philadelphia, which today, she testified, is worth $25,000. He also owns a house and lot in Baltimore, Maryland, which is valued at $3,000, for which he receives a monthly rental of $30 and a lot in Castanea, Pennsylvania, worth about $1,000.

Appellee testified that her husband, as late as June, 1940, stated the value of Joseph A. Martocello & Com-

pany to be $100,000. He was drawing $125 a week from the business. The Stroudsburg Company was said to be worth $125,000 to $150,000. Appellant's income from the Stroudsburg Company was stated to be $14,000 to $15,000 a year, and he drew $50 per week from the Frigid Ice Company which was stated to be worth $140,000 to $150,000.

The Hawley Ice Company, appellee stated, has a value of $15,000 and the Pottstown Blower Company, a value of $25,000, and from the latter company, appellant drew $50 per month.

Appellee estimated her husband's worth as "something over $600,000." On cross-examination, appellee stated that the values of the various companies fixed by appellant in his conversations with her were their cost. In other instances, she said the value was the sale price.

Appellee testified further that appellant traveled a good deal, and that at least part of the $125 per week he drew from Martocello & Company was consumed by traveling expenses. She further testified that his net income was $24,000 a year. She stated that she was accustomed to receive $30 a week for household expenses and "oftentimes he would give me a twenty-dollar bill extra for spending money." This money was used primarily for the table and he paid all other expenses.

The defendant denied the drawings testified to. William Charles Leychong, an accountant called in behalf of respondent, testified that he had been employed by appellant since March, 1940, and left his employ May 5, 1941. He testified as to his audits of the various companies and corporations. According to his testimony, the net worth of the various companies as of 1940 was as follows:

Joseph A. Martocello & Company ...... $40,982.50
Hawley Ice Company (Deficit) ........ 770.23
Stroudsburg Ice & Cold Storage Company 60,727.21

Frigid Ice Company .................. 57,768.82

Total Net Worth .................$158,708.30

The Profit and Loss Statement, according to his testimony, for 1940 was as follows:

Joseph A. Martocello & Co., Net Profit .. $189.05
Hawley Ice Company, Net Loss ........ 1,247.04
Stroudsburg Ice & Cold Storage Co.,
  Net Loss .......................... 5,398.96
Frigid Ice Company, Net Loss .......... 8,139.49

Total Net Loss ................... $14,596.44

The witness also testified as to other income received by appellant as follows:

Baltimore property ................... $3.51
Dividends on stock ................... 206.50
Stroudsburg Ice & Cold Storage Co. .... 1,800.00

Total .......................... $2,010.01

The last item was a bookkeeping transaction to conform with income tax laws and does not represent a cash withdrawal by appellant.

This witness further testified that the general ledger account listed withdrawals by appellant as charged to his drawing account during 1940 amount to $8,736.59, and in another account to correct defects in the bookkeeping system during October, November, and December, 1940, amount to $1,448.05. During the year the witness testified that appellant usually drew $125 per week, which is included in the withdrawals above mentioned, which included both traveling expenses and personal expenses.

The witness testified further that as of December 1, 1940, the credit balance in the capital account of Joseph A. Martocello was $247,065.14, whereas on December 31, 1940, it was $49,268.96. He testified that certain items were taken off the books of Joseph A.

Martocello & Co., and the book entries transferred to appellant personally and that this was done to make the accounts of the company "conform to business practice."

The witness testified in detail as to the manner in which he arrived at the various figures entering into the results obtained.

From the maze of figures in the testimony which would require an expert accountant to analyze, the court made an order of $100 per week, stating in the opinion that "under the circumstances, the Court had nothing dependable upon which to judge what his (appellant's) real earnings actually were, assuming they were not what the wife said they were, and to guide the Court in making an order."

It should be noted that this order was made for the support of the wife exclusively, as appellant, according to the testimony, had expended approximately $2000 per year for the support and education of his minor son at school.

We do not think that any case of this character should be disposed of in this manner in order to do justice between the parties. There is nothing in the opinion of the court below indicating how he arrived at the sum of $100 per week in making the order. If the testimony of relatrix be taken as a correct basis, the order might be justified. Her testimony based on alleged statements made by respondent but denied by him are not of such character as to be relied on in making an order for support. We believe that relatrix should be afforded an opportunity for examination of appellant's books at such time and under such conditions as may be mutually agreed upon and in default of agreement then to be fixed by the court below.

If the testimony on behalf of appellant were to be believed, the order of the court is highly excessive. As the case will go back for further testimony we have not undertaken to analyze the testimony as to the

interests or the income from the various concerns in which appellant is interested.

The general rule, supported by numerous cases in our court, is that the amount awarded for the support of a wife, where the support of a child or children is not involved, should not exceed one-third of the income from the property and labor of her husband. *Commonwealth ex rel. v. Milne*, 90 Pa. Superior Ct. 68, 72, 73; *Commonwealth v. Gilleland*, 93 Pa. Superior Ct. 307, 309; *Commonwealth ex rel. Shotz v. Shotz*, 130 Pa. Superior Ct. 561, 563, 198 A. 472; *Commonwealth ex rel. Liuzzi v. Liuzzi*, 142 Pa. Superior Ct. 239, 241, 15 A. 2d 738.

This court has frequently held that an order for support "is not to punish the respondent for his conduct, or misconduct, towards his wife and family, but is to secure such an allowance for their support as is reasonable having in view the property, income and earning capacity of the respondent and the condition in life of the family:" *Com. ex rel. Fort v. Fort*, 124 Pa. Superior Ct. 151, 152, 188 A. 416.

Appellant has assigned as error (second assignment of error) the court's refusal to allow counsel for appellant to cross-examine appellee as to her worth. During the course of cross-examination of appellee, counsel for appellants attempted to ascertain from her what holdings she had and what she was worth in general.

In *Com. ex rel. Liuzzi v. Liuzzi*, supra, we said at p. 241; "The fact that the relator is gainfully employed does not deprive her of her right to support by her husband; that duty is imposed upon him by law: *Com. ex rel. Shotz v. Shotz*, 130 Pa. Superior Ct. 561, 198 A. 472. *The amount of a wife's separate earnings is, however, one of the relevant circumstances to be considered in fixing the amount of an order.*" (Italics supplied.)

This assignment must be sustained. We believe that the court below should consider as one of the circum-

stances of the case what separate income the wife has, and a failure to do so constitutes error.

The assignments of error are sustained, the order of the court below is reversed with a procedendo.