Commonwealth ex rel. Schofield *v.* Schofield, Appellant.

632

Argued March 18, 1953. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Gunther and Wright, JJ.

*Harry J. J. Bellwoar, Jr.,* with him *Bellwoar & Rich,* for appellant.

*David Cohen,* with him *Harry R. Back* and *Back & Levy,* for appellee.

OPINION BY WRIGHT, J., July 14, 1953:

This case involves a habeas corpus action instituted by William Schofield, the relator, of Miami Beach, Dade County, Florida, to obtain custody of two of his children, namely, William A. Schofield, Jr., and Dorothy Schofield. The court below dismissed the petition and ordered relator to pay the sum of $40.00 per week for the support of all four of his children. Relator has appealed.

William Schofield and Dorothy Schofield were married in September 1946. Prior to the marriage the defendant bore the relator two children, Dorothy Schofield and William A. Schofield, Jr., now aged 10 and 8 years, respectively. After the marriage two more children were born to the parties, Robert Schofield and Richard Schofield, now aged 5 and 3 years. During the time they lived together, the relator and his wife were residents of Philadelphia, living in a rented house

at 3246 N. 15th Street. The wife testified that her husband was physically abusive to her and the children and that "as a result of his drinking habits . . . . . he has been in a number of sanatoriums". On March 6, 1951, the wife finally left the common habitation. She did not take the children immediately "because he would know I was leaving him, and I didn't know what he might do to me". Thereafter she made prompt efforts to obtain their custody. The two younger children were surrendered to her voluntarily. As to the two older children she testified, "he understood I wanted them, and he said he would turn them over to me at the end of the school year".

Subsequently, defendant applied to the Municipal Court of Philadelphia County for support for the two younger children who were with her. At that time she did not know the relator's whereabouts, but later discovered that he had gone to Florida, taking with him the two older children. In September 1951, defendant received a notice advising her that the relator was applying for a divorce in Florida. Meanwhile a bench warrant had been issued, a detective agency employed to locate relator, and extradition attempted at considerable expense, but the State of Florida refused to honor the extradition warrant.

The defendant obtained counsel in Miami, Florida, a de bene esse appearance was entered on her behalf and the divorce proceeding attacked on the grounds of want of jurisdiction, but that question was ruled in relator's favor. On December 17, 1951, the Circuit Court of Dade County, Florida entered a decree of absolute divorce, the said decree further granting to the husband "entire and permanent care, custody and control of the two (2) children of the parties now in his custody, to wit: William A. Schofield, Jr., aged 6 years; and Dorothy Schofield, Jr., aged 8 years, as he is a fit

and proper person to have such custody". The Decree also directed that he "pay to the Defendant, Dorothy Schofield, the sum of $15.00 per week for the support and maintenance of the two (2) minor children in her custody, to wit: Robert Schofield, aged 3 years; and Richard Schofield, aged 1 year". On February 20, 1952, the defendant went to Miami Beach, Florida, and picked up the two older children in their school class-rooms and brought them to Philadelphia.

At the time of hearing on May 14, 1952, relator was not present in person, but was represented by counsel. His evidence consisted solely of an exemplified copy of the divorce decree. The defendant testified in her own behalf, and testimony was also given by her mother and step-father. The two older children were privately examined by the hearing judge.

As set forth in his statement of questions involved, the appellant relator contends (1) that the lower court erred in refusing to restore the custody of the two older children to the father in accordance with the decree of the Circuit Court of Dade County, Florida; and (2) that the lower court erred in imposing a support order upon the father for the four children when the right to custody of the two older children is in him by virtue of the Florida decree, and for the further reason that there was no evidence in regard to the father's earnings upon which the lower court could base an order for support. We can find no merit in either contention.

Section 147 of the Restatement, Conflict of Laws, provides: "Except as stated in §148, when the cus-tody of a child has been awarded by the proper court to either parent, the decree will be enforced in other states". However, this is not a fast and unyielding rule, for in Comment (a) to this section it is stated: "It (the decree of custody made by a competent court in another state) is, therefore, conclusive of the status of the child

at the time the decree was rendered and the merits of such an award cannot be re-examined either in the state where rendered or in another state . . . Therefore, while courts in other states will enforce the custody decree in so far as it determines the status of the child at the time it was issued, they may, if they have jurisdiction, change such award upon facts which have arisen subsequent to the first decree".

The opinion of the United States Supreme Court in *New York ex rel. Halvey v. Halvey*, 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 1133, is particularly helpful in the present controversy. In that case, as in this, a custody decree entered in Florida was involved. There the wife took the child to Florida and then instituted divorce proceedings. The day before the decree was granted the husband took the child back to New York without the knowledge or consent of the wife. However, the court emphasized that it did not base its decision on this point. The Florida decree granted an absolute divorce and awarded the permanent care, custody and control of the child to the wife. She then came to New York and instituted a habeas corpus proceeding. The New York courts modified the Florida decree by allowing the custody of the child to remain in the wife, but granted the husband rights of visitation and directed the wife to file a bond to secure this privilege. The Supreme Court affirmed this ruling. Mr. Justice DOUGLAS delivered the majority opinion from which we quote at length because of the excellent analysis of the effect of the Florida decree.

"The custody decree was not irrevocable and unchangeable; the Florida court had the power to modify it at all times. Under Florida law the 'welfare of the child' is the 'chief consideration' in shaping the custody decree or in subsequently modifying or changing it . . . Facts which have arisen since the original de-

cree are one basis for modification of the custody decree . . . But the power is not so restricted. It was held in Meadows v. Meadows, 78 Fla. 576, 83 So. 392-393, that 'the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, *if such facts were not presented or considered at a former hearing.*' (Italics added.) Or, as stated in Frazier v. Frazier, 109 Fla., p. 168, 147 So., p. 465, a custody decree 'is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child.' The result is that custody decrees of Florida courts are ordinarily not res judicata either in Florida or elsewhere, except as to the facts before the court at the time of judgment . . .

"Respondent did not appear in the Florida proceeding. What evidence was adduced in that proceeding bearing on the welfare of the child does not appear. But we know that the Florida court did not see respondent nor hear evidence presented on his behalf concerning his fitness or his claim 'to enjoy the society and association' of his son . . .

"So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do . . .

"In this case the New York court, having the child and both parents before it, had a full hearing and determined that the welfare of the child and the interests of the father warranted a modification of the custody decree . . ."

Mr. Justice RUTLEDGE, in a concurring opinion, made the cogent observation that ". . . if the state rendering the judgment gives it no final effect to prevent its alteration, I am unable to see how others having jurisdiction of the parties and the subject matter may be required to give it finality in this respect by virtue of the provision for full faith and credit".

In Pennsylvania, it has consistently been held that an adjudication of custody is an adjudication upon the issue presented and upon that only. So far as children are concerned, the situation is, or may be, constantly varying. A parent fit to have custody of his children today may, by reason of changed circumstances become unfit tomorrow: *Com. ex rel. v. Daven*, 298 Pa. 416, 148 A. 524. In this case, both the parents and the children were residents of Buncombe County, North Carolina. At the instance of the father, the children were brought before the juvenile court as a result of which they were placed in a boarding home. The mother, ignoring the judgment of the court, secured the children and removed them to Philadelphia where she took up residence. A representative of the North Carolina juvenile court brought the children before the Municipal Court of Philadelphia County by a writ of habeas corpus. That court remanded the children to the juvenile court in North Carolina and the order was affirmed by the Superior Court. On appeal to the Supreme Court, the order was reversed and the record ordered remitted with directions to rehear the case upon its merits and make such disposition thereof as would promote the future welfare of the children in question. The unanimous opinion of the Court was given by Mr. Justice WALLING, who said (p. 419):

"We think, however, the municipal court fell into error in refusing to hear evidence as to present condi-

tions or pass upon the merits of the case when heard before it. Orders fixing the custody of children are temporary in their nature and always subject to modification to meet changed conditions. In the instant case it was expressly so made. The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well being. To this the rights of parents and all other considerations are subordinate. Moreover, the controlling question is the welfare of the child at the time of the hearing before the court and not at some former time. Here, the real question before the municipal court was the proper custody of the children living in Philadelphia in 1928; on that question all relative evidence was admissible. The error of the municipal court was in refusing to hear testimony especially as to changed and present conditions and in treating the adjudication in North Carolina as permanently fixing the status of the children so that it could be changed by no other court. That would be right in a judgment concerning property, but any court called upon to determine the custody of children must do so under conditions existing when it acts . . .

"There are authorities, however, which hold that the award of the custody of children in one jurisdiction cannot be properly changed in another except on proof of changed conditions and that the burden of proof as to the latter rests upon the one who is seeking a change of custody. See 46 C.J. 1255 and cases there cited. This is not consistent, however, with the principle on which the leading cases rest, viz.: that, whenever a court is called upon to award the custody of a child, the guiding star is its welfare. And the court where the matter is pending must decide that grave question on its own best judgment, unfettered, but not necessarily uninfluenced, by a prior adjudication".

The next paragraph of the opinion ably sums up what we consider to be a correct statement of the power of the court of another jurisdiction to re-determine the question of custody (p. 422) :

"In our opinion, the true view of the question is that where the custody of a child has been passed upon by the proper court in one jurisdiction who has heard the case and made an adjudication incorporating therein certain findings of facts, the facts so found should, as to the parties participating therein be treated as established and not open to question in another jurisdiction, especially where the parties so appearing neglected to avail themselves of the statutory right of appeal. Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interests of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court re-hearing the case".

The lower court in the instant case had jurisdiction over the parties. The mother and four children were, at the time the petition for the writ of habeas corpus was filed, domiciled and resident in the City of Philadelphia. Jurisdiction of a court in a proceeding involving custody is determined by the domicile or residence of the child: *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 80 A. 2d 829. Moreover, the father subjected himself to the jurisdiction of our courts by filing the petition. Section 83 of the Restatement, Conflict of Laws, states: "A plaintiff by bringing an action in a state subjects himself to the jurisdiction of the state as to the claim sued upon . . ." It was therefore proper for the lower court to enter into a full hearing of the matter and to reach a decision which would best promote the welfare of the children involved: *Com. ex*

*rel. v. Daven,* supra; see the Act of June 26, 1895, P. L. 316, §2, 48 P.S. 92.

Since the matter has now come before us for review, it is our duty to exercise independent judgment as to its merits: *Com. ex rel. Bachman v. Bradley,* 171 Pa. Superior Ct. 587, 91 A. 2d 379; *Com. ex rel. Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A. 2d 625. In the case of *Hixon's Appeal,* 145 Pa. Superior Ct. 33, 20 A. 2d 925, Judge (now President Judge) RHODES said: "In reviewing such proceedings our duty is prescribed by the Act of July 11, 1917, P. L. 817, §1, 12 P.S. §1874, which directs that we 'shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong.' ".

It has been wisely said that "Such questions are among the most difficult which a judge is called upon to determine. Often no decision is possible without wounding the sensibilities of those who, after they have developed a deep affection for the child over the period of years, are called upon to surrender the child": *Com. ex rel. Children's Aid Society v. Gard,* 162 Pa. Superior Ct. 415, 58 A. 2d 73. The governing criterion is the welfare and interest of the children involved. "To this the rights of the parents and all other considerations are subordinated, and each case must be reviewed in relation to the happiness, training, development and morals of the infant": *Hixon's Appeal,* 145 Pa. Superior Ct. 33, 20 A. 2d 925. See also *Com. ex rel. Cooper v. Cooper,* 167 Pa. Superior Ct. 492, 75 A. 2d 609.

In the present case the mother testified that at the time she left her husband it was impossible to take the children with her. Subsequently, she secured proper living quarters and obtained custody of the two younger children. Instead of surrendering the two older chil-

dren at the end of the school term, the father surreptitiously took them to Florida at a time when his wife was seeking to secure a support order. There the husband had his 82 year old mother care for them. At the time his divorce was granted so far as Pennsylvania is concerned, relator was a fugitive from justice.

When the wife brought the two older children back from Florida she took them to her step-father's house. It is significant to note here the fact that the mother now has facilities for caring for all the children—something which was lacking at the time she was given the two younger children. The wife's step-father testified that he was willing to have all four children and their mother live with him. Judge BONNELLY examined the two older children in chambers, and talked briefly to the third. Both Dorothy and William stated that they wanted to stay with their mother. The judge remarked that "The children appear to be intelligent and well-fed". And later said in open court: "I have seen the three older children, and they appear well mannered, healthy, and happy. The two older ones say they have an earnest desire to stay with the mother, although they have a fondness for the father".

We are here faced with the same situation which existed in the *Halvey*[1] case. As in that case, the defendant did not appear before the Florida court. We do know that the Florida court did not see her or hear evidence on her behalf. What other testimony may have been presented bearing on the welfare of the children does not appear.

In habeas corpus proceedings the relator has the burden of proving, by a preponderance of credible evi-

---

[1] It should be noted that the doctrine of the *Halvey* case has not been altered by the recent decision in *May v. Anderson*, 345 U.S. 528.

dence, that the ultimate welfare and best interests of the children would be best served by awarding the custody to him: *Com. ex rel. Children's Aid Society v. Gard,* 162 Pa. Superior Ct. 415, 58 A. 2d 73. He was content to present his petition for a writ and rest his case entirely on the decree of the Florida court. The fact that he failed to appear or offer evidence other than this decree leaves us only the testimony of the defendant and her witnesses. We must constantly bear in mind that the paramount consideration is what will best serve the interest and welfare of the children, and that during minority the court may make such orders regarding custody as the circumstances may demand: *Com. ex rel. Children's Aid Society v. Gard,* 162 Pa. Superior Ct. 415, 58 A. 2d 73; and 362 Pa. 85, 66 A. 2d 300; see *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 80 A. 2d 829. We are of the opinion that in the instant case the physical, intellectual, moral, and spiritual well-being of all four children will be best promoted by keeping them with the mother.

A mother is ordinarily presumed to be better qualified to rear a child of tender years: *Com. ex rel. Firestone v. Firestone,* 158 Pa. Superior Ct. 579, 45 A. 2d 923; see *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 80 A. 2d 829. As was stated by Judge HIRT, in *Com. ex rel. Gates v. Gates,* 161 Pa. Superior Ct. 423, 52 A. 2d 562, "In general, the needs of a child of tender years are best served by its mother and unless compelling reasons appear to the contrary, such child should be committed to the care and custody of its mother". Furthermore, where the child is of sufficient intelligence, its preferences and attachments should be consulted: *Com. ex rel. Sage v. Sage,* 160 Pa. 399, 407, 28 A. 863.

In determining questions of custody the ultimate duty rests upon the appellate court to exercise independent judgment: *Com. ex rel. Kreiling v. Kreiling,*

156 Pa. Superior Ct. 526, 40 A. 2d 704; *Com. ex rel. Goessler v. Bernstein,* 149 Pa. Superior Ct. 29, 26 A. 2d 213. However, we are not unmindful of the fact that the hearing judge had the opportunity of seeing and hearing the witnesses in this case. Weight is to be given to the fact that the defendant appeared before him and he had full opportunity to pass upon her ability and character: *Com. ex rel. Knouse v. Knouse,* 146 Pa. Superior Ct. 396, 22 A. 2d 618; *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 74 A. 2d 790. Consequently, we feel that the following paragraph from Judge BONNELLY'S opinion is particularly relevant:

"Our own careful and independent inquiry convinces us that the best interests of the children require their continued residence with the mother. With the mother they are receiving careful nurture, beyond the powers of the aged grandmother, who was caring for the children while they were in the custody of the father. They are still at an age when a mother's care and guidance is of paramount importance. Moreover, keeping the two older children with the mother maintains the unity of the family relationship. It is an undoubted benefit to all the children to be reared together and not in separate establishments. The two older children are at an age where their own preferences should not be ignored. They both expressed a desire to remain with the mother".

The fact that the mother took the children from Florida without the father's consent, and in violation of the decree of the court of that state is important here only in so far as it may have a bearing upon her fitness to be awarded their custody: *Com. ex rel. v. Daven,* 298 Pa. 416, 148 A. 524. We do not feel that this act of a mother seeking her children (particularly under the facts herein) is of such serious consequence as to deprive her of her rights in them.

Appellant contends that the lower court had no authority to make an order for the support of the two older children, on the ground that their custody was by law in the relator. This contention is sufficiently answered by the award of custody to the mother. Appellant further contends that the lower court had no authority to enter an order for the two younger children since the Florida decree provided for their support and since the wife failed to establish the father's earnings as of the time of the hearing, and failed to establish any change in circumstances concerning earnings between December 17, 1951, and May 14, 1952. We have concluded that the support order was properly entered.

In *Com. ex rel. Binney v. Binney,* 146 Pa. Superior Ct. 374, 22 A. 2d 598, this court said: "Support orders are not final. If there is a change in conditions, the order can be increased or decreased as the circumstances of the case warrant". The shifting of the custody of the two older children to the mother was a material change of circumstances which warranted an order for the support of the family unit.

Ordinarily, an order of support must be based on the appellant's property, income and earning ability at the time of the hearing: *Com. ex rel. Simmler v. Simmler,* 134 Pa. Superior Ct. 339, 4 A. 2d 215; *Com. ex rel. Binney v. Binney,* 146 Pa. Superior Ct. 374, 22 A. 2d 598. However, the court is not restricted to a husband's actual earnings as the sole basis of a support order, but is entitled to consider also his earning power: *Com. ex rel. Glener v. Glener,* 173 Pa. Superior Ct. 108, 94 A. 2d 102. This is particularly true where there may be some question as to the husband's good faith: see *Com. ex rel. Barker v. Barker,* 160 Pa. Superior Ct. 263, 50 A. 2d 739.

In the case before us the husband is a structural engineer and his earnings at the time the parties separated were about $150.00 a week. Once again it must be remembered that the husband instituted this action, but did not see fit to appear and testify. In *Com. ex rel. Rey v. Rey,* 159 Pa. Superior Ct. 284, 48 A. 2d 131, this court held that where the defendant does not take the witness stand and divulge his financial status, the court should draw liberal inferences in favor of the wife from the testimony presented in her behalf. See also *Com. ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 40, 24 A. 2d 712.

The amount which the husband should be ordered to pay is largely in the discretion of the trial court and, unless there is a clear abuse of discretion, its judgment will not be disturbed by the appellate court: *Com. v. Henderson,* 143 Pa. Superior Ct. 347, 17 A. 2d 692. We do not perceive that this discretion was abused in ordering the payment of the sum of $40.00 per week for the support of four children in view of the husband's undisputed earning power.

The order of the court below is affirmed at the cost of the relator.