## Commonwealth ex rel. Pulvers v. Pulvers

*Robert M. Abramson* and *Vito N. Pisciotta,* for petitioner.

*Leo T. Connor,* for respondent.

*Marvin R. Halbert,* Assistant District Attorney, for Commonwealth.

*Daniel J. DiGiacomo,* Assistant United States Attorney, for United States.

BONNELLY, J., July 15, 1958.—This is a hearing on petition for writ of habeas corpus filed by Julius Pulvers, Sr., for the custody of his minor son, Julius Pulvers, Jr. The child was born in Latvia, July 23, 1942, entered the United States for permanent residence on July 12, 1950, and has continuously resided with his mother since the separation of the parents in 1952.

A few months ago the mother expressed a desire to return to her native country of Latvia and to take her son Julius with her. When the father learned of this, he consulted the legal aid society. Counsel then prepared a petition for writ of habeas corpus which was allowed by the court and a hearing was had thereon on July 8, 1958.

At that hearing it was established that the mother had called at the office of the Russian Embassy in Washington and filed an application for Russian-Latvian passports for herself and her minor son. These passports were subsequently issued and are now in the possession of a travel agency in New York City. It was further disclosed that the father was admitted to United States citizenship on Monday, July 7, 1958, and that the boy emphatically indicated he did not want to return to Latvia, not even for visitations, that the boy is over six feet tall and expressed a strong desire to be

with his father, to become an American citizen and remain here as a citizen and that both the mother and father are capable morally and physically to take care of the boy.

Although it was intended to await the report of a medical examination before entering an order in this case, it has come to the attention of the court that a delay on the question of custody might affect the right of the child to derive American citizenship, and we therefore believe that an order should be entered immediately.[1]

We are aware of the decisions that hold a child of tender years should be awarded to its mother unless there are compelling reasons to the contrary. In regard to the awarding the custody of children it has been wisely said: "Such questions are among the most difficult which a judge is called upon to determine. Often no decision is possible without wounding the sensibilities of those who, after they have developed a deep affection for the child over the period of years, are

---

[1] Section 321 of the Immigration and Nationality Act of June 27, 1952, 66 Stat. 245, 8 U. S. C. A. §1432, provides as follows:

"(a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions: . . .

"(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . and if

"(4) Such naturalization takes place while such child is under the age of sixteen years; and

"(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of sixteen years."

It would appear that since the father was naturalized on July 7, 1958, prior to the boy's sixteenth birthday, the boy might not derive citizenship unless legal custody were awarded to the father prior to the child's sixteenth birthday.

called upon to surrender the child": Commonwealth ex rel. Childrens' Aid Society v. Gard, 162 Pa. Superior Ct. 415, 420.

This case presents an unusual situation. There is no physical or moral reason why the mother should not have custody of this child. However, the child, Julius, will be 16 years of age July 23, 1958. He is over six feet tall and is in junior high school. We examined the child in open court, and in the presence of his mother and father he emphatically stated he did not want to return to Latvia, not even for visitation. His strong desire was to be with his father, to become an American citizen and remain in this country as an American citizen.

We do not need any stronger argument in favor of the child's wishes than that he is opposed to returning to his birthplace, Latvia, as that country is under the domination of Communist Russia. We know of no higher award that can be given to a child than to confer upon him the cherished citizenship of the United States.[2] We need not go into a dissertation about Communist Russia. We know that to force this child to return to Communist Russia will be to inflict cruel and unusual punishment upon said child.

We are further convinced that the father is capable morally and physically of taking care of his son. As much as we sympathize with the desire of the mother, we feel as was stated in Schofield v. Schofield, 173 Pa. Superior Ct. 631, that: "Where the child is of sufficient intelligence his preferences and attachments should be consulted."

Accordingly, the legal custody of Julius Pulvers, Jr., is awarded to the father, Julius Pulvers, Sr.

---

[2] As set forth above the grant of legal custody prior to the boy's sixteenth birthday would probably result in his being a United States citizen by derivation.