## Commonwealth ex rel. Kling v. Hanmer

*John J. Shumaker,* for petitioner.

*Carl G. Wass,* for respondent.

WICKERSHAM, J., August 17, 1972.—This matter

is before the court on a petition for change of custody filed by respondent, Glace E. Hanmer, relating to his son, Darrel Lee Hanmer, age 14.

## BACKGROUND

Jeanne Sarah Brenize was married to Glace E. Hanmer on June 12, 1954. Two children were born to this marriage: Dale Eugene Hanmer, born June 8, 1955, now 17 years of age, and Darrel Lee Hanmer, born June 27, 1958, and now 14 years of age. The family resided at R. D. No. 3 (near Piketown), Dauphin County, Pa. On June 6, 1968, a decree in divorce was granted to Jeanne S. Hanmer, plaintiff.[1] Two months following the divorce decree, Glace E. Hanmer married Nancy E. Mayberry, age 29, from Winston Salem, N. C. It was her first marriage and no children have been born of that union to date.[2]

By virtue of an agreement reached between Jeanne S. Hanmer and Glace E. Hanmer under date of March 11, 1968, and several months prior to the decree in divorce, custody of the two minor children was granted to the mother, Jeanne S. Hanmer. Following the divorce, in November of 1968, the two minor children were taken by Glace E. Hanmer without the permission or consent of their mother, as a consequence of which a petition for writ of habeas corpus was filed

---

[1] The decree in divorce entered to January term, 1968, no. 1103, was signed by Judge William W. Lipsitt. The sworn testimony in the divorce proceeding indicated rather clearly that the husband, Glace E. Hanmer, had become enamored with another woman and desired to divorce in order to marry the other woman.

[2] Following her divorce from Glace E. Hanmer, Jeanne S. Hanmer married John C. Kling on November 14, 1968. No children have been born of that union and the Klings continue to reside at the home near Piketown, R. D. No. 3, Dauphin County, Pa.

to the above term and number seeking the return of custody to the natural mother.

A hearing was held December 23, 1968, before Judge Carl B. Shelley and by order of court that date, it was concluded that the best interests and welfare of the boys would be best served by permitting them to remain with their mother. In July of 1969, Dale Eugene Hanmer, having reached the age of 14, petitioned the court to change custody as to him setting forth his desire to live with his father, Glace E. Hanmer, and his stepmother, Nancy Hanmer. On July 24, 1969, a stipulation of counsel and order of court by Judge Carl B. Shelley granted custody of Dale Eugene Hanmer to Glace E. Hanmer with visitation rights provided for in the mother.

## THE INSTANT PETITION

This matter is presently before the court on a petition for change of custody filed by Glace E. Hanmer alleging that Darrel Lee Hanmer has now attained the age of 14 years and that his son Darrel wishes to leave the custody of his natural mother and return to the custody of his natural father. On July 26, 1972, a full hearing was held on the instant petition.[3]

The basic statutory provision in matters of this nature is found in the Act of June 26, 1895, P. L. 316, which provides as follows:

"In all cases of dispute between the father and

[3] Carl G. Wass, Esq., appearing for Glace E. Hanmer and John J. Shumaker, Esq., appearing for Jeanne S. Kling before Judge Richard B. Wickersham.

The two boys, Dale and Darrel, were excluded from the courtroom during the proceedings but were later, the same day, both interviewed by the court privately. In addition, on Friday, August 4, 1972, with agreement of all parties and counsel, the two boys, Dale and Darrel, returned to the chambers of Judge Wickersham for a further private, transcribed conference.

mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child."[4]

As was said in Commonwealth ex rel. Logue v. Logue, 194 Pa. Superior Ct. 210, 215 (1960):

"Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother, by whom the needs of the child are ordinarily best served. Commonwealth ex rel. Schofield v. Schofield, 173 Pa. Superior Ct. 631, 98 A.2d 437; Commonwealth ex rel. Lamberson v. Batyko, 157 Pa. Superior Ct. 389, 43 A.2d 364.

"One of the strongest presumptions in our law is that a mother has a prima facie right to her children over any other person. Commonwealth ex rel. Harry v. Eastridge, 374 Pa. 172, 97 A.2d 350; Commonwealth ex rel. Minnick v. Wilson, 159 Pa. Superior Ct. 230, 48 A.2d 27; Commonwealth ex rel. Williams v. Price, 167 Pa. Superior Ct. 57, 74 A.2d 668. In the recent case of Commonwealth ex rel. Horan v. Horan, 193 Pa. Superior Ct. 193, 163 A.2d 673, this Court upheld the mother's custody of two boys aged eleven and eight, even though there was a question of indiscretion on the part of the mother and the boys had requested to remain with their father."

The difficulty facing the court in a matter of this nature and the true test to be applied was aptly stated in Commonwealth ex rel. Schofield v. Schofield, 173 Pa. Superior Ct. 631, 642 (1953):

---

[4] Section 2, 48 PS §92.

"It has been wisely said that 'Such questions are among the most difficult which a judge is called upon to determine. Often no decision is possible without wounding the sensibilities of those who, after they have developed a deep affection for the child over the period of years. are called upon to surrender the child': Commonwealth ex rel. Children's Aid Society v. Gard, 162 Pa. Superior Ct. 415, 58 A.2d 73. The governing criterion is the welfare and interest of the children involved. 'To this the rights of the parents and all other considerations are subordinated, and each case must be reviewed in relation to the happiness, training, development and morals of the infant': Hixon's Appeal, 145 Pa. Superior Ct. 33, 20 A.2d 295. See also Commonwealth ex rel. Cooper v. Cooper, 167 Pa. Superior Ct. 492, 75 A.2d 609."

In the Schofield case, supra, it was also pointed out that in habeas corpus proceedings the relator here, (Glace E. Hanmer, the natural father) has the burden of proving, by the preponderance of credible evidence, that the ultimate welfare and best interests of the children would be best served by awarding the custody to him.

Finally, the rule is well established in custody cases, that the expression by a child of a wish to stay with a particular parent is a factor which should be considered but is not controlling, especially where the child is of tender age. Where the interest of the child will best be served by placing a child with the parent for whom preference has not been expressed, this consideration will prevail: Commonwealth ex rel. Hickey v. Hickey, 213 Pa. Superior Ct. 349, 355 (1968).

In Commonwealth ex rel. Bender v. Bender, 197 Pa. Superior Ct. 397 (1962), Judge Woodside, speaking for the Superior Court, held that the involved chil-

dren, ages 11 and nine, were of tender years. He went on to point out, however:

". . . However, as children grow older less weight must be given to the tender years doctrine and more weight must be given to the preference of the children. There are some cases when, because of the age of the children involved, only one of these doctrines is applicable. In this case both were properly given some consideration in the decision, for the children are still young enough to have some weight given to the tender years doctrine and old enough to have some weight given to their preference."

In Commonwealth ex rel. Skurat v. Gearhart, 178 Pa. Superior Ct. 245 (1955), it is stated that a child may be of tender years until about age 14 but not necessarily so. The subjects of that habeas corpus proceeding were 13 and 12 years of age, two boys.

President Judge Brosky, Family Division, Allegheny County Common Pleas Court, in Commonwealth of Pennsylvania ex rel. v. Johnson, 119 Pitts. L.J. 177 (1971), set forth with clarity the matters to be considered in a case of this nature, the Johnson case involving a daughter aged 13 and a son aged eight:

"One of the strongest presumptions in law is that custody of children of tender years will be given to the mother. Commonwealth ex rel. Hickey v. Hickey, 213 Pa. Sup. 349, but this is not a right but a presumption that can be rebutted where there are compelling reasons why custody should not be awarded to her, in re Snellgrose, 432 Pa. 158; and, in that same case, the Court said the guiding principle in the determination of best interests and welfare of the child must be with regard to happiness, training, physical, intellectual, moral, spiritual and emotional well being of the child; nor, is the fact that one parent is better off financially

than the other sufficient reason by itself to award custody, Commonwealth ex rel. Shipp v. Shipp, 209 Pa. Superior Ct. 58; and, note, too that the expressed wishes of the children, although not controlling, should be carefully considered when based on good reasons, Commonwealth ex rel. Traeger v. Ritting, 206 Pa. Superior Ct. 446, and, it is the policy of the law to keep children of the same family together and where children are well adapted to their present environment, they should not be separated nor their surroundings changed except for good reasons, Commonwealth ex rel. Traeger, supra; children are entitled to a feeling of security and permanence in their home life, to look forward to a manner and way of life that will continue, Peiffer v. Peiffer, 14 Chest. 99; that the length of time a child has resided with a party in question is also a factor for consideration, Commonwealth ex rel. McKee v. Reitz, supra; and, since the welfare of the child must be uppermost in the Court's evaluation, each case must be evaluated and rest upon its own factual situation."

## EVIDENCE ADDUCED AT HEARING

Glace E. Hanmer testified at the hearing July 26, 1972, that by order of Judge Shelley, when Dale became 14 years of age, he was transferred to his custody and has been living with his natural father for over three years. He said that he has had discussions in detail with his oldest son, Dale, as well as with Darrel since Darrel turned 14 and the father testified that it was Darrel's expressed preference that he come to live with his natural father. He testified that he only wanted what the boy wanted and that the boy has said time and time again that he wants to come with his father. Mr. Hanmer testified that although he now resides at R. D. No. 3, Harrisburg, he is soon to move

to New Oxford, R. D. No. 2, Adams County, Pa., where he recently acquired a 99-acre farm. His full-time occupation is that of a maintenance man at Central Dauphin School District and farming is a sideline as of now. He said that his reason for purchasing the larger farm was to use for himself and his son Dale to raise steers. He testified that Dale is 17 years of age and will be a senior in high school starting in September 1972. He testified that if he obtains custody of Darrel, the boy would attend Gettysburg Junior High School and that the boy has expressed no objection to the change in his present schooling. He said his present wife, Nancy, gets along well with Darrel, that she is a teacher and is very fond of Darrel, the subject of this custody proceeding.

He testified that his personal desire in the matter was that if Darrel wanted to stay with his mother, he the natural father, would not have been in court on the custody petition. He stated that he loved his son and would not force him one way or the other on the subject of custody. He testified that Darrel has at times complained of being unhappy in the custody of his mother in that he would like to farm and be with his brother and with his father. He admitted that since Dale, the other boy, has been in his custody he has not been associated with any church, although he contended that religious training had continued. He said that his older boy, Dale, has his own car which he paid for from his own industry and that the boy works very hard at various odd jobs. He said that after he moves to Gettysburg he is going to attempt to get a job closer to his new home.

Nancy E. Hanmer testified that she is the wife of Glace E. Hanmer, that she is an English teacher at Central Dauphin High School and that she gets along fine with Dale and that she treats him as a mother would treat a growing son. She said that she has been

with Darrel, the subject of this controversy, on many occasions during periods of visitation and that they get along fine. She is 29 years of age, from Winston-Salem, N. C., and this is her first marriage. She has no children of her own.

The natural mother, Mrs. Jeanne Kling, testified that she resides at R. D. No. 3, Harrisburg, and is married to John C. Kling. She is a housewife and her husband is a truck driver, over the road. Her son Darrel goes to Lower Paxton Junior High School. She said that her older son, Dale, who is in the custody of his natural father, spends quite a bit of time at her home. She described Dale as a very energetic and hard-working boy.

She flatly denied that Darrel was unhappy at home. She admitted that her oldest son, Dale, had shown much discontentment prior to his turning 14 years of age.

She testified that Darrel has not complained to her that he is unhappy and that he has told her that she has done nothing to upset him, that he is contented where he is but that he would still like to go and be with his brother. Darrel is entering the ninth grade this fall of 1972. He has many young boys his age to play with where he now lives. His home has a swimming pool in the yard and photographs of the family home were exhibited to the court evidencing a very neat, clean, country atmosphere.

She said that Darrel attends church regularly at the Church of the Nazarene on Earl Drive in Lower Paxton Township and that he has always done so. She said Darrel is a normal boy and that her home is run with appropriate discipline. She said Darrel had no complaints against his stepfather.

Reverend Paul F. Knight, pastor of the Church of the Nazarene, testified and described the Kling family as

among the very best members. "You could not ask for better people in your church," in both cooperating and serving and in their family life, a very balanced Christian life, as he described it. He said Darrel attends church regularly. He said he had spoken with Darrel on the proposed change and Darrel's principal interest seemed to be a desire to be with his brother with also an interest in the fact that his brother had an automobile and that he, Darrel, might have more freedom and be able to go places where he could not now go if he were transferred to the custody of his natural father. He never said to the minister that he was unhappy in his present surroundings and to the contrary said that he was happy.

He told the minister that it would be the wisest thing to stay with his mother. He said the boy is being reared in a very fine home.

Mrs. Nancy Dougherty testified that she lives near the Klings, and has a son who is very close to Darrel; in fact, almost inseparable, also aged 14. She sees Darrel nearly every day and never has heard him indicate that he is unhappy in his home. She said that the Klings provide a marvelous home for a teenage boy.

John Kling testified, among others, stating that he was the stepfather of the boy, that Darrel has never indicated to him that he is unhappy and never indicated that he was unhappy with his mother. John Kling testified that he wanted the boy to stay at the Kling home and that he loved the boy and that there was no real problem in the Kling home relating to the boy.

At the special hearing involving the two boys held Friday, August 4, 1972, in chambers, the court reviewed the entire situation at great length with both Darrel and Dale. Dale, the 17-year-old boy, admitted that the Klings have a pleasant and happy marriage and home for Darrel to be raised in. Dale said that there

is no doubt in his mind that his natural mother was very attached to Darrel and loved him and wanted him to remain at the Kling home. On the other hand, he testified that he has talked to his brother, Darrel, about transfer of custody on a number of occasions and that Darrel has expressed a desire to live with his Dad, to live on the farm. He said that both homes, the Hanmer home and the Kling home, are livable and about the same in his mind. Dale also felt that it was an important factor that the Klings might move closer to Carlisle, nearer to the terminal where Mr. Kling receives his trucking assignments. Dale pointed out that this would involve Darrel in meeting new friends and going to a new school system just the same as if he came to live with his father at the new home in New Oxford, Adams County.

In speaking with the 14-year-old subject of this custody proceeding, Darrel said that in his opinion the most important factor to be considered was what he likes best. He said the home atmosphere would be also important and he agreed that both the home of his natural mother and of his natural father were nice homes. He also thought the desire of his respective parents was an important consideration. He further pointed out that he would like to be with his older brother and that he and his brother, Dale, get along well. He admitted that if custody were changed at this time, it would hurt his mother and she would miss him very much.

## CONCLUSION

There is no doubt that both parents could provide adequate housing and there is no doubt that both parents desire to have Darrel at their respective homes and that they both love him and would raise him well. It is also true that Darrel, the 14-year old boy who is

the subject of this controversy, has expressed a clear preference towards custody with his father primarily based upon a desire to be with his brother, Dale, aged 17. Since Dale is now 17, however, and a senior in high school, this association between the two boys could well last only one more year at best, that is, on a day-to-day association with one another. As was said in Clair Appeal, 219 Pa. Superior Ct. 436 (1971) at page 440:

"Although the wishes of the children cannot be the only determinative factor, we have recognized many times that they deserve careful consideration."

We have given very careful consideration to the desires of Darrel, as well as the desires of his older brother and his natural father. We must also, however, in considering the over-all welfare and best interests of the child, give strong consideration to the continued custody in his mother where he has been since birth and with his various friendships built up with other children in the community where he lives, his church affiliation and his school ties.

Even though both parents are morally fit and economically able to rear Darrel Lee Hanmer, we conclude that his welfare will best be promoted and served by his not being subjected to new relationships and new environments, replacing certainty with uncertainty in his young life. We see no compelling need for changing the custody arrangement presently in force, whereby Dale Eugene Hanmer is in the custody of his natural father and stepmother and Darrel Lee Hanmer is in the custody of his natural mother and stepfather. This custody arrangement has not been demonstrated as being inimical to their welfare.[5] To

---

[5] Commonwealth ex rel. Shepley v. Szobocsan, 84 Dauph. 7 (1965).

reduce the impact of this decision,[6] frequent visitations among and between the two boys should be encouraged and effected by the parents, as should visitation by the children with the parent not having their custody.

For the foregoing reasons, we make the following

### ORDER

And now, August 17, 1972, the petition of Glace E. Hanmer for change of custody of Darrel Lee Hanmer is dismissed. Costs to be paid by the said Glace E. Hanmer. Jurisdiction to be retained in this court and in the absence of an amicable and liberal agreement relating to visitation rights as set forth hereinabove, the matter to be returned to this court for further order.

[6] In view of the expressed preference of the subject of this proceeding, Darrel Lee Hanmer, as reviewed hereinabove.