Commonwealth ex rel. McGovern, Appellant, *v.* McGovern.

282

Argued September 14, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Fred T. Cadmus, III*, with him *Cadmus, Good and Patten*, for appellant.

*John J. Duffy*, for appellee.

OPINION BY WATKINS, J., March 27, 1973:

This is an appeal by the appellant-wife, Bernice M. McGovern, from an order of the Court of Common Pleas of Chester County discharging a rule to show cause why an order of support should not be increased because of changed circumstances.

On September 14, 1971, an order of support was entered by the late Judge Carl B. SHELLEY, specially presiding, after hearing, directing payment by the husband, Frank J. McGovern, to pay his wife Fifty ($50) Dol-

lars a week for the support of four (4) minor children and Ten ($10) Dollars per week for the support of the wife.

The question before us, on appeal, is whether the court below abused its discretion in finding no change in circumstances warranting an increase of the original order.

The burden of proof rests on the party seeking to modify a court order. The party must show in this case by competent evidence such change or changes that will justify modification. *Commonwealth ex rel. Heineman v. Heineman,* 185 Pa. Superior Ct. 32, 137 A. 2d 349 (1958); *Commonwealth ex rel. McAlaine v. McAlaine,* 203 Pa. Superior Ct. 276, 199 A. 2d 498 (1964).

At the original hearing, the appellant was represented by other counsel and there is no transcript of testimony because it was not reported. The change of circumstances alleged was due to increased earnings by the husband or that he earned more than he had admitted at the original hearing. The original order was evidently satisfactory to both sides as no appeal was taken by either party. The period from September 14, 1971, to December 30, 1971, is a short period to show change of circumstances by earnings and indicates that perhaps the petition was taken as a substitute for an appeal.

The parties separated in October, 1971, four children ranging in ages from 10 to 15 years reside with the mother. The oldest boy attends Friends School and it costs approximately One Thousand ($1,000) Dollars yearly which is paid for by the father. The wife was employed at the time of the separation, and was earning One Hundred, Twenty-Four ($124) Dollars weekly. Also at the time of separation, she withdrew one-half of the parties joint bank account. She testified that in exchange for certain property rights, she assist-

ed her husband in obtaining a loan for business purposes in the amount of Fifteen Thousand ($15,000) Dollars.

The wife owns the former jointly owned residence of a net value of Seventy Thousand ($70,000) Dollars and owns one-half interest in the property where her husband maintains his office and sleeping quarters. This property had a net value of approximately Twenty-Two Thousand ($22,000) Dollars. The husband testified that he has suffered a net loss in his painting business and that he was in much worse economic state than he was at the time of the original hearing. He had to reduce his work force because of this. He testified that if he gave up the business and found employment as a painter his earnings would be approximately One Hundred and Eighty ($180) Dollars weekly. He testified that this was exactly what he testified to at the original hearing. The wife testified that her husband told her that his business was good and his earnings had materially increased. This, of course, raised a question of credibility for the court below.

From the testimony, it appears that both husband and wife have found other "companions". In fact, it appears that the separation was the result of the wife's alleged philandering with her doctor-employer.

The wife complains bitterly because the husband refused to produce his books and to answer certain questions by claiming the privilege of the Fifth Amendment on the ground that their production might tend to incriminate him.

"Where the defendant does not take the witness stand and divulge his financial status, the court should draw liberal inferences in favor of the wife from the testimony presented in her behalf." *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 647, 98 A. 2d 437 (1953).

In *Couch v. United States*, 409 U.S. 322, 93 S. Ct. 611 (1973) the question was raised as to whether a taxpayer may invoke the Fifth Amendment privilege against compulsory self-incrimination to prevent the production of her business and tax records in the possession of her accountant as subpoenaed by the Internal Revenue Service. The Supreme Court pointed out the importance of preserving inviolate the privilege against self-incrimination but held that by its nature it is an intimate and personal one and held that as the books and papers subpoenaed were in the hands of the accountant, the ingredient of personal compulsion was lacking and held the privilege unavailable.

However, we need not here discuss the right to the use of the privilege in this action because the wife does not raise the question, but contends that she is entitled to have liberal inferences drawn in her favor and against her husband in determining his financial status. The court below is entirely silent in its opinion as to this matter.

In the *Schofield* case, supra, the husband did not take the stand so the only evidence for consideration before the court below was her evidence. It is, therefore, of course, necessary for the court to draw liberal inferences in favor of the wife in determining the husband's financial status. However, in the instant case he did testify and both presented contradictory testimony as to the financial status of the husband and in considering this, the court did not abuse its discretion in determining that no change in circumstances existed.

Order affirmed.