## Commonwealth ex rel. Dinsmore *v.* Dinsmore, Appellant.

Argued April 9, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*W. Robert Thompson,* with him *Thompson and Baily,* for appellants.

*John I. Hook, Jr.,* with him *Scott and Hook,* for appellee.

OPINION BY WATKINS, J., June 13, 1962:

These are appeals by Neysa E. Dinsmore, the mother relator, from two orders of the Court of Common Pleas of Greene County, Pennsylvania, awarding custody of Anita Ellen Dinsmore, age 16, and Lawrence Douglas Burns Dinsmore, age 10, to their father, Lawrence B. Dinsmore, the respondent.

The parties were married January 22, 1945. At that time the respondent father was a resident of Richhill Township, Greene County, Pennsylvania, and was a Captain in the Merchant Marine. The relator was a resident of the State of Washington and employed by the U.S.O. Anita was born on October 25, 1945, and Douglas on June 21, 1951. After the respondent was discharged from the Merchant Marine he took his wife to live in Richhill Township and in 1956 constructed a ranch type home in which the family lived together until June 4, 1959. We need not go into the personal records of the parties because the court below determined "Both parents are of good character and we do not question the fitness of either at this time." This statement was contained in the order of August 31, 1959, but nothing to the contrary appears in the subsequent opinions of the court below.

Sometime during the month of June, 1959 the relator left home and took the children with her to the State of Oregon. Thereafter the respondent followed them to Oregon and returned with Anita to their common home in Greene County. The relator then instituted habeas corpus proceedings in Greene County on August 18, 1959. After hearing, the court below entered an order awarding custody of both children to the mother relator and providing custodial visitation rights to the father, beginning one calendar week after the closing date of the school year and ending one calendar week before the beginning of the next school year. Neither party appealed this order.

Subsequently, as the court below relates: "Apparently, the said Neysa E. Dinsmore was not content with the order of this Court, for on the 28th day of March, 1960, in the Circuit Court of the State of Oregon for Lane County, in equity, a motion was made by her attorney for temporary custody of said children, restraining Lawrence B. Dinsmore from communicating with Neysa E. Dinsmore or interfering with her custody of the children during the pendency of this suit.

"In the absence of personal jurisdiction over Lawrence B. Dinsmore, he being within the State of Pennsylvania, an order was entered on May 2, 1960, awarding temporary custody of Anita E. Dinsmore, then age fourteen, and Douglas Dinsmore, age nine, during the pendency of said equity proceedings, which order reads as follows: 'This matter coming on to be heard upon the Motion and Affidavit of Plaintiff herein for temporary custody of children and a Restraining Order and the Court having considered the same and finding good cause therefor. IT IS HEREBY ORDERED that Plaintiff, Neysa E. Dinsmore, is hereby awarded the temporary custody of Anita Dinsmore, age 14, and Douglas Dinsmore, age 9, during the pendency of this suit. IT IS FURTHER ORDERED THAT Defendant, Lawrence B. Dins-

more, is restrained and enjoined from interfering with the Plaintiff's custody of said children and from communicating with Plaintiff during the pendency of this suit, or until further Order of this Court modifying this Order, whichever first occurs. Dated this 2nd day of May, 1960'.

"Subsequent to the date of said temporary order for custody in the State of Oregon, the said Neysa E. Dinsmore permitted the said Anita Ellen Dinsmore and her brother Douglas Dinsmore, in accordance with the order of this Court, to return to the home of their father, Lawrence B. Dinsmore, in Richhill Township, this county, during the summer of 1960, but not for the full period directed by the order of this Court. The said Neysa E. Dinsmore later entered into a bond to faithfully comply with all the terms and conditions of the order of this Court, and the children were then returned to her in the State of Oregon at the beginning of the school year for 1960, and remained with her until the end of the school term in June, 1961. Thereafter, Lawrence B. Dinsmore gave bond to comply with the terms and conditions of the order of this Court, and the children were then returned to the home of their father, Lawrence B. Dinsmore, and were with him at the time of the institution of this proceeding."

The children arrived in Pennsylvania in accordance with the Court's order on June 13, 1961. During the ensuing weeks Anita, again, as she did in the original hearing, indicated her desire to remain with her father. Thereupon the daughter and her father joined in a petition to the Court of Common Pleas asking that a rule issue to Neysa E. Dinsmore, to show cause why the order of August 31, 1959 should not be amended to award custody of Anita to her father. At the same time the father filed a similar petition praying a rule on the mother to show cause why the order should not be amended to award custody of Douglas to his father.

The relator filed answers to both petitions claiming that Greene County no longer had jurisdiction to amend or modify its order of August 31, 1959 and further claimed that the welfare of both children would be better promoted by allowing them to remain with her.

At the hearing the relator requested that the jurisdictional question be settled first and on September 25, 1961 the court below dismissed the objections to jurisdiction. After hearing on the merits, the court below on December 28, 1961, awarded custody of both children to the father, subject, however, to the rights of the mother to visitation. The relator appealed from both orders on both grounds.

At the time of the orders, Anita was 16 years of age and Douglas was ten. At the time of the original order Anita was not yet fourteen years of age and Douglas was just eight years of age. The order at that time turned on "the policy of the law that children of tender years should be with their mother and also for the further reason that it is the policy of the law to keep children together." At that time Anita had requested that she be permitted to remain with her father.

Both children are evidently quite intelligent. Anita was quite determined in her request that she be permitted to remain with her father. Her school work in Greene County had been satisfactory. Douglas stated that he loved his father and his mother but that if Anita stayed with the father that he wanted to stay with him.

The decisions of the appellate courts of this State are to the effect that all orders determining the custody of children are temporary in nature, and always subject to modification to meet changed conditions, so long as the court has jurisdiction. *Com ex rel. Teitelbaum v. Teitelbaum*, 160 Pa. Superior Ct. 286, 288, 50 A. 2d 713 (1947).

As the court below said concerning jurisdiction:

"There is no question at the time the habeas corpus proceeding was instituted in this county by the said Neysa E. Dinsmore that this Court had jurisdiction. The mere presence of the children here was sufficient to give jurisdiction, and in addition thereto, the said Neysa E. Dinsmore, relator, voluntarily submitted herself to the jurisdiction of this Court. See Com. ex rel. Camp v. Camp, 150 Pa. Superior Ct. 649, 651; Commonwealth ex rel. Schofield v. Schofield, 173 Pa. Superior Ct. 631, 641; Commonwealth ex rel. Scholtes v. Scholtes, 187 Pa. Superior Ct. 22, 26; Restatement, Conflict of Laws, Section 83.

"This Court is not required to give full faith and credit to a temporary decree of another State, such as entered by the Circuit Court of the State of Oregon for Lane County, in equity. See Com. ex rel. Bucciarelli v. Bucciarelli, 162 Pa. Superior Ct. 583, 586; Lynde v. Lynde, 181 U. S. 183. In fact, the Circuit Court of the State of Oregon for Lane County should have given full faith and credit under Article IV, Section 1 of the United States Constitution to the order of this Court dated August 31, 1959. See Com. ex rel. Schofield v. Schofield, 173 Pa. Superior Court, supra.

"The relator, Neysa E. Dinsmore, contends that since she is now a resident of the State of Oregon, and that the children were in her custody in that state, that this Court no longer has jurisdiction over them, citing the case of Com. ex rel. Freed v. Freed, 172 Pa. 276, 280, which reads: 'The jurisdiction of a court in a proceeding involving custody is determined by the domicile or residence of the child. Com. ex rel. Camp v. Camp, 150 Pa. Superior Court, 649, 29 A. 2d 363; Commonwealth ex rel. Graham v. Graham, 367 Pa. 553, 80 A. 2d 829.' "

As we said in *Irizarry Appeal*, 195 Pa. Superior Ct. 104, 108, 169 A. 2d 307 (1961): "If the court has juris-

diction it is because the two boys are residents of Delaware County. It is true that the action was brought by the mother on July 26, 1960, just thirteen days after they arrived for a visit with the consent of the custodial parent. However, the law is well settled in Pennsylvania that jurisdiction in custody cases follows either the domicile of the minor children or their residence and the domicile of the children is that of the parent having custody. Com. ex rel. Burke v. Burke, 168 Pa. Superior Ct. 578, 80 A. 2d 87 (1951) ; Com. ex rel. Teitelbaum v. Teitelbaum, 160 Pa. Superior Ct. 286, 50 A. 2d 713 (1947) ; Com. ex rel. Swigart v. Swigart, supra.

"In Lesker Case, 377 Pa. 411, 105 A. 2d 376 (1954), at p. 418, the Supreme Court said: 'It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. . . . However, in strict technical terminology, a habitation may be defined as an abode for the moment, residence a tarrying place for some specific purpose of business or pleasure, and domicile the fixed, permanent, final home to which one always intends to return.'

"Restatement, Conflict of Laws, §148, supra, says that jurisdiction will lie, 'In any state into which the child comes, . . .' Residence being sufficient for jurisdiction and residence being a tarrying place for some specific purpose of business or pleasure, the courts of Pennsylvania have held that the mere presence of the children within the jurisdiction of the court, even for the thirteen day visit with their mother, is sufficient. Com. ex rel. Graham v. Graham, supra."

In awarding custody in the original order and the amended order, the court considered two policies recognized by the law. The first, that custody of children of tender years should be awarded to the mother. *Hixon's Appeal,* 145 Pa. Superior Ct. 33, 20 A. 2d 925 (1941) ; and the second, that in determining the custody of chil-

dren, consideration must be given to rearing children of the same parents together in a family relationship. 28 P.L.E., Parent and Child, §35, page 267. *Com. ex rel. McKee v. Reitz,* 193 Pa. Superior Ct. 125, 129, 163 A. 2d 908 (1960).

In determining the custody of children the paramount question to which all other recognized policies of the law as to custody, including the above, are subordinated, is the welfare of the children. "It is basic and fundamental that the paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Com. ex rel. McNamee v. Jackson,* 183 Pa. Superior Ct. 522, 525, 132 A. 2d 396 (1957). And this Court, in considering an appeal from an order awarding custody, should give great weight to the opinion of the hearing judge who had the opportunity of seeing and hearing the witnesses, judging their credibility, seeing and talking with the minors, and is in a much better position to determine what is best for the welfare of the children. *Com. ex rel. Mitchell v. Mitchell,* 186 Pa. Superior Ct. 347, 142 A. 2d 304 (1958).

Although Anita had expressed a preference to remain with her father at the first hearing, the court overrode this preference because of her tender years. Both children are now more than two years older, which is in itself a change in circumstances, and although Anita continued for that time in the custody of her mother, at sixteen she was even more desirous of living with her father.

"Although the expressed wishes of the children are not controlling, they constitute a factor which should be carefully considered." *Com. ex rel. McNamee v. Jackson,* supra, at page 527. In that case the children were fourteen and nine years of age respectively. The

older child indicated a preference to remain with his grandmother rather than his father, while the younger child was not asked his preference but indicated no desire to leave his grandmother. This Court held there was no good reason why these children should be separated.

As the court below, in his original order, determined custody on the basis of the tender years of Anita and to keep the children together, his determination that their welfare, under the change of circumstances, brought about by the passing of years, and the continued desire of this intelligent girl to live with her father, we will not interfere with the decision of the hearing judge, that under these circumstances their welfare will be best served by keeping them together in the custody of their father.

Orders affirmed.