Commonwealth ex rel. Shipp *v.* Shipp,
Appellant.

Argued September 15, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and SPAULDING, JJ. (HOFFMAN, J., absent).

*James A. Burgess, Jr.,* with him *Nelson Romisher,* for appellant.

*Roger M. Whiteman,* with him *John Linwood Owens,* for appellee.

OPINION BY JACOBS, J., November 17, 1966:
In this case the father of Elizabeth Jane Shipp seeks custody of her from her mother. The court be-

low awarded custody to the father and the mother appeals. We remand with directions.

Harriet McCoy Shipp and Clifford M. Shipp were married on June 17, 1955. Three children were born of this marriage. A son, Laughlin, was born June 17, 1960, a son, Joseph, was born February 12, 1962, and Elizabeth, the subject of this proceeding, was born June 9, 1965. For the four years immediately preceding December 11, 1965 the family lived together in Fulton, Missouri. On December 11, 1965 the mother left home with a married man by the name of Ted Mallinckrodt and went to Philadelphia with him. She took Elizabeth with her. Shortly after the mother left, the father began a divorce action in Fulton, Missouri, and received a final decree of divorce on February 19, 1966. On April 6, 1966 the father filed a petition for a writ of habeas corpus in the County Court of Philadelphia, and on April 28, 1966 a hearing was held in the court below before the Honorable JAMES L. STERN. On June 16, 1966 Judge STERN made an order awarding custody of Elizabeth to her father and giving the mother the right to have the child for one month in the summer and one week at Easter time and one week at either Thanksgiving or Christmas time.

Custody must be determined on the basis of the facts as they exist at the time of the habeas corpus hearing. *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437 (1953) ; *Commonwealth ex rel. Cleary v. Weaver,* 188 Pa. Superior Ct. 197, 146 A. 2d 374 (1958). At that time and for some time prior thereto the husband, who was 36 years old, was assistant to the president of William Wood College in Fulton, Missouri, and received an annual salary of $12,700 plus certain perquisites including a large, rent free house with all utilities except telephone, free heat and a car allowance. After his wife left he continued to maintain the home in Fulton, Missouri,

with the two boys and a 67 year old retired practical nurse as housekeeper. From the time they left Fulton until approximately one week prior to the hearing the mother, who is 32 years old, and Mallinckrodt, who is 44 years old, lived together as husband and wife in Philadelphia. Elizabeth lived with them. Some time during the week prior to the hearing Mallinckrodt moved to the Y.M.C.A. The mother is not working, and the rent for the apartment in which she remained is paid by Mallinckrodt. She and Elizabeth are supported entirely by Mallinckrodt except for $20 a week which she receives from her sister. Mallinckrodt is employed by the Veterans' Administration on a temporary appointment and has a take home pay of $80 per week. Elizabeth is a healthy, happy, well cared for child.

In a case involving the custody of a child our paramount concern and the paramount concern of the court below is the welfare of the child. *Cochran Appeal,* 394 Pa. 162, 145 A. 2d 857 (1958). This child is a child of tender years and ordinarily such a child's needs are best served by her mother and she should normally be committed to her mother's custody, particularly where the child is a girl. *Commonwealth ex rel. Horton v. Burke,* 190 Pa. Superior Ct. 392, 154 A. 2d 255 (1959) ; *Commonwealth ex rel. Lovell v. Shaw,* 202 Pa. Superior Ct. 339, 195 A. 2d 878 (1963). However, compelling reasons may require the mother's rights to give way to the best interests of the child. *Commonwealth ex rel. Buell v. Buell,* 186 Pa. Superior Ct. 468, 142 A. 2d 338 (1958). It was for such compelling reasons that Judge STERN awarded the child to her father.

The court below concluded that there were a number of reasons why custody of Elizabeth should be given to her father. The court held that the two brothers and the sister should live together; that her future would be secure financially and educationally in the home of the father; that the mother's health was not

good and could endanger the child, and, finally, that the immoral environment surrounding the mother was not good for the child. If it were not for the last of these reasons we would reverse the court below and award Elizabeth to her mother. The fact that one parent is better off financially is not in itself sufficient to require custody to be given to that parent. *Cochran Appeal,* supra. The desire to keep the children together is important, but it standing alone would not overcome the need of this child for its mother. The testimony presented to the court below in regard to the ill health of the mother was meager and was based entirely on lay testimony, and the condition of the child as a healthy, happy child indicates that the child is not in much danger by reason of her mother's physical condition. The moral lapse did not adversely affect the care of Elizabeth. However, taken all together, we cannot say that they were not sufficient to support the lower court's ruling. The burden is upon the appellant, in this case the mother, to establish that the order of the lower court is erroneous or that it is based upon error of law, *Commonwealth ex rel. Bell v. Bell,* 200 Pa. Superior Ct. 646, 189 A. 2d 908 (1963), and we are satisfied that she has not met that burden.

This mother's moral conduct has been deplorable and she is entitled to no sympathy. However, we are quite concerned over the effect of this decree upon Elizabeth. At the time of the hearing she was not yet eleven months old. She was not old enough to have been aware of any immorality surrounding her or to have been harmed by it. During her entire life she has been under the constant care of her own mother. The effect of taking her away from the shelter of the only mother she has ever known into a family where the only female is an elderly housekeeper might have a very unfavorable effect upon her mentally. We fear this effect and do not favor running the risk of it unless the rea-

sons are most compelling. The one reason which standing alone seems to justify such an order is the finding of an immoral situation under which this child will be raised. Apparently the court below felt that the immoral situation continued to exist at the time of the hearing. The court was justified in making such a finding on the basis of the vagueness of the mother as to when Mallinckrodt had moved out of the apartment and her dependence on him. If, however, the immoral environment has been corrected in good faith and no additional reasons are present to show that the mother is unfit she should have her child.

Therefore, in view of our deep concern over the traumatic effect this order may have on the child and the fact that once this child is returned to Missouri our jurisdiction as a practical matter is gone, we deem it necessary to remand this case for further proceedings. More than six months has elapsed since the hearing was held in this case and all custody orders are temporary in nature and subject to modification to meet changed conditions. *Commonwealth ex rel. Schofield v. Schofield,* supra; *Commonwealth ex rel. Cleary v. Weaver,* supra. This order should be re-examined in light of the situation as it now exists.

We remand the case to the court below with directions that it promptly hold another hearing and make an appropriate order not inconsistent with this opinion.

ERVIN, P. J., and SPAULDING, J., would affirm on the able opinion of the court below.