## Commonwealth ex rel. Holschuh, Appellant, *v.* Holland-Moritz.

438

Argued April 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stanley P. Stern,* for appellant.

*Leon Ehrlich,* for appellees.

OPINION BY MR. JUSTICE EAGEN, June 30, 1972:

Anita Holland-Moritz Holschuh, relatrix, appeals from an order of the Superior Court reversing the Court of Common Pleas of Berks County and awarding the custody of her minor children, Peter and Kai, to the respondents, Mr. and Mrs. August Holland-Moritz.

Mrs. Holschuh is a thirty-four-year-old architect and resident of the State of Connecticut. In these proceedings which were begun in 1969, she seeks by writ of habeas corpus to obtain the custody of her two sons, ages twelve and eleven respectively, from her parents, August and Anna Holland-Moritz.[1]

Appellant was separated from her husband in August 1965 and a divorce decree was entered in October 1966. After the dissolution of the marriage the children were brought to Berks County in June 1965 to live with their maternal grandparents and aunt. Appellant worked briefly in New York City but in April 1966 she returned home to her parents and children. Anxious to complete her college education, she enrolled at the University of Pennsylvania in September 1966 and was subsequently graduated in 1968. Under an arrangement reached with her parents, the latter were to have custody of the two boys until appellant had completed her

---

[1] The father of the children, Albrecht Holschuh, was not a party to these proceedings.

education and was financially able to support them. During this two-year period Mrs. Holschuh worked week nights as a waitress in order to defray her expenses. Hence, her visits with her children were limited to non-school times such as weekends. In the fall of 1968 appellant enrolled in the graduate school of architecture at Yale University. Because of the increased distance and expense of traveling, Mrs. Holschuh testified that she was able to visit her children only once each month.

At the hearing before Judge EDENHARTER in the trial court, appellant admitted having affairs with other men since the time of her divorce. She also disclosed that she was presently sharing her living quarters with a male graduate student, a Douglass Southworth, who was her "best friend". It was further testified, however, that with the expected departure of Mr. Southworth for California, this living arrangement would be permanently altered. Mrs. Holschuh professed a great desire to be reunited with her children, saying, "it will change my life" and that "the presence of them would evoke my position of mother which I have not been able to exercise over the past five years."

As an aid to reaching his decision, Judge EDENHARTER had the benefit of reports from both the Family Relations Division of the Superior Court of New Haven, Connecticut and the Berks County Children's Services.[2]

[2] The New Haven report is quite exhaustive and reviews Mrs. Holschuh's entire life. It was in this report that appellant admitted smoking marijuana "once or twice a month" with Mr. Southworth, contending that it was a socially acceptable substitute for alcohol. The report assessed Mrs. Holschuh to be "an individual of superior intelligence with the characteristics of independence and determination dominant in her personality make-up", and said that she was "a stable and contented individual capable of managing her personal life to her personal satisfaction." This same report also concluded that appellant had "little or no regard for conventional standards whether moral or social" and opined that the chil-

Upon consideration of this wealth of evidence, the hearing judge awarded appellant the custody of her two sons, finding Mrs. Holschuh to be an individual with "a spirit of independence and a determination to succeed." The judge said her decision initially to place the children with her parents while she completed her education "was a wise one and demonstrated her concern for their welfare." The court said it did not condone or seek to justify her past conduct but that it was able "to comprehend that for her it was a time for misguided exploration", adding, "We find that she is ready and able to resume her responsibilities as a mother." The contention that appellant was an unfit mother was rejected out of hand. The court concluded by observing that "to leave these children with their elderly grandparents, or with their aunt, would deprive them of their last real chance to grow with a mother's love and care which should continue for the lifetime of the mother."

On appeal, the Superior Court in a unanimous opinion (219 Pa. Superior Ct. 402, 281 A. 2d 729 (1971)) took exception with the lower court's disposition of the matter, saying at p. 403: ". . . her way of life is described by the lower court as 'a misguided exploration' which, as we read this record, has not ended. All we can see is a promise by her that, if awarded her children, she will change her manner of living and that the presence of her sons will enable her to do so. This promise should not have been given the weight the lower court apparently gave it, since on occasions in the past during visitations of the children with petitioner

---

dren would probably have to make a significant adjustment, coming as they would be from a home where the values and standards were strikingly different from those espoused by appellant. The Berks County report described the comfortable surroundings obtaining at the Holland-Moritz farm and reported the two boys to be happy, well adjusted youngsters who attended a nearby private school.

in her home, her male companion continued to stay there." The Superior Court did not, however, find appellant to be an unfit mother. As Judge MONTGOMERY, speaking for the court, wrote: "We hesitate to characterize the petitioner as an unfit mother and to conclude that she should not have her children for that reason. On the contrary, we will deny her custody because she has not established an environment where their welfare will be promoted. Until she does so to the satisfaction of this Court, the children should continue to live in the environment they presently enjoy." 219 Pa. Superior Ct. at 404.

Thus on the same record, we are confronted with two diametrically opposite results by the courts below.[3]

Notwithstanding recent changes in the habeas corpus statutes pertaining to appeals in child custody proceedings, the scope of review of this Court and of the Superior Court remains that of the broadest type.[4]

---

[3] It should be noted by way of postscript to the facts that appellees inform us in the brief of certain contumelious conduct by appellant. It is asserted that appellant took her sons for a vacation period in June 1971, and has since concealed them from appellees, enrolling them in a Connecticut school under fictitious names. After proceedings in the Court of Common Pleas of Berks County, Judge EDENHARTER held appellant in contempt of court. She has to date, we are told, failed to correct the situation.

[4] Appeals formerly went to the Superior Court by virtue of 12 P.S. §1874 which directed that tribunal in proceedings involving the custody of children to "consider the testimony and make such order upon the merits of the case . . . as to right and justice shall belong." Act of July 11, 1917, P. L. 817, §1. This statute was repealed absolutely by 17 P.S. §211.509(a)(66) and the repealer was made retroactive to the effective date of the Appellate Court Jurisdiction Act of 1970. Provision for appeal in habeas corpus custody proceedings is now provided by 12 P.S. §1907. The present appeal was properly before the Superior Court by virtue of 17 P.S. 211.302. The net effect of all these changes was to render appeals of the instant type just like any other habeas corpus appeal.

The relevant legal principles in this area are well settled and are easily stated in the abstract. Concrete application is much the more formidable task. The paramount consideration in cases of this nature is at all times the best interests and welfare of the child, which includes its physical, intellectual, moral and spiritual well-being, and all other considerations are subordinate. *Commonwealth ex rel. Kuntz v. Stackhouse,* 176 Pa. Superior Ct. 361, 108 A. 2d 73 (1954). This rule of law holds true whether the contest be between parents or between a parent and a third party. *Commonwealth ex rel. Shaak v. Shaak,* 171 Pa. Superior Ct. 122, 90 A. 2d 270 (1952). While each case must finally rest on and be determined by its own facts, *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 138 A. 2d 225 (1958), the general rule is that a parent is entitled to the custody of his child as against one who is not its parent, and this right is so moving and cogent that it is forfeitable only by misconduct or other factors which substantially affect the child's welfare: *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa. Superior Ct. 73, 143 A. 2d 665 (1958). Further, one of the strongest presumptions in our law is that a mother has a prima facie right to her children over any other person, *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960). This presumption in favor of maternal custody should only be overcome in the most extreme of circumstances. *Commonwealth ex rel. Fox v. Fox,* 216 Pa. Superior Ct. 11, 260 A. 2d 470 (1969).

Among the great disparities in this case are the ages, as well as the philosophies, of the respective parties. Appellant is thirty-four, while her mother is seventy and the father seventy-five. While it is certainly not *the* controlling factor, the age of seventy and beyond is hardly an ideal time of life to be raising two boys on the verge of entering their teen-age years.

While the boys were living with their grandparents, they attended a private school, an advantage which their mother said she was financially unable to provide. However, a mother should not be deprived of the custody of her children merely because a better home in physical aspects, or a higher standard of living can be provided elsewhere. *Commonwealth ex rel. Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A. 2d 625 (1948). Nor is it important that Mrs. Holschuh must work for a living as opposed to her mother who concededly has more time to devote to these boys. "[A] mother should not be deprived of the custody of her child of tender years because she is compelled to work for a living." *Commonwealth ex rel. Lovell v. Shaw,* 202 Pa. Superior Ct. 339, 344, 195 A. 2d 878 (1963).

The oldest boy, Peter, testified at the hearing below that he did not care to live with his mother. Pressed for a reason, he explained "because she goes to school all of the time and works and don't have free time," adding, "my grandmother doesn't go to work and I go to a good school." As was said in *Commonwealth ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 116 A. 2d 336 (1955):

" 'Although the expressed wishes of the children are not controlling, . . . they constitute a factor which should be carefully considered.' [Citations omitted.]

'[T]he preference expressed by a child must be based on good reasons, and the child's maturity and intelligence must be considered.' [Citations omitted.]" *Id.* at 176. The hearing judge sympathetically evaluated the reasons behind the wish and properly considered it not to control.

It is especially noteworthy that neither court which passed upon this case found Anita Holschuh to be an unfit mother despite appellees' contention that her private conduct merited such a characterization.

As was hereinbefore noticed, a parent's right to the custody of her child is only forfeitable by misconduct or other factors which substantially affect the child's welfare. Likewise, it has been held that even a moral lapse by the mother will not warrant depriving her of custody, as long as the lapse does not involve the treatment and care of the children, *Commonwealth ex rel. Kevitch v. McCue,* 165 Pa. Superior Ct. 49, 67 A. 2d 582 (1949). Instantly the record establishes with but one exception,[5] that the questionable conduct took place during that time when appellant did not have custody of the children. No complaint has ever been voiced about her care and treatment of these boys or the manner in which she kept her home.

The point of disagreement between the Superior Court and the hearing judge was the conclusion drawn from Mrs. Holschuh's promise of reformation.[6] This was not necessarily an invasion of the fact-finder's province since from the reception of the promise flowed other deductions and conclusions of law.[7] In our view, appellant's case was damaged by the fact that at the

---

[5] The one exception was when the children visited their mother in Connecticut while Southworth was living with her.

[6] Evidently the hearing judge was greatly impressed with appellant and probably with good reason since she is a woman of excellent education and high intelligence. Further, she has always tried as best she could to provide for the welfare of her sons, while at the same time pursuing her goal of a completed education.

[7] In its opinion at page 404 the Superior Court denied custody because appellant "has not established an environment where their welfare will be promoted." As we interpret this statement, the court was saying that the best interests of the two children did not lie in going to a home where *at that point in time* their mother was openly living with a man not her husband, promises to the contrary notwithstanding. Although unexpressed, the court undoubtedly did not lose sight of the fact that the boys would be leaving the jurisdiction of the court and its ability to insure that the promise was performed.

time of the hearing nearly two years ago (and therefore at the time she evinced the intent to cease such conduct) Southworth was still living with her, although it was testified his departure was imminent. Hence on the record all there was was a bare promise to correct the existing situation.

While custody is determined on the basis of the facts as they exist at the time of the habeas corpus hearing, *Commonwealth ex rel. Cleary v. Weaver,* 188 Pa. Superior Ct. 197, 146 A. 2d 374 (1958), it is not unusual, as a case winds its way through the appellate process, for the underlying facts to change substantially. Cognizant of this mutability, the law makes custody orders temporary in nature and subject to modification. Instantly, appellant's brief indicates that the present record has grown stale in that Southworth has departed and appellant, now a practicing architect, is presently sharing quarters with a widow and her five children on a farm near New Haven. While all of this is dehors the record and thus without the ambit of our consideration, they are nonetheless important developments.

We therefore remand this case to the Court of Common Pleas of Berks County for an additional hearing and, if the home environment has been corrected in good faith, then custody should be awarded to the mother.

It is so ordered.

----

CONCURRING OPINION BY MR. CHIEF JUSTICE JONES:

I find myself in the unenviable position of disagreeing with the basic conclusions reached by the majority and the dissenting opinions.

In my view, the order of the Superior Court, reversing the order of the Court of Common Pleas of Berks County, should be affirmed without qualification.

With the greatest of reluctance, however, I will agree with the determination of three of my colleagues to remand this matter to the Court of Common Pleas of Berks County for an additional hearing.

The conduct of the appellant—the mother of these two children—has been of such nature as to justify a denial to her of the custody of the children. Mindful that a mother ordinarily does have a prima facie right to her children over any other person, the evidence on this record convinces me that this presumption in favor of maternal custody has been overcome and rebutted. This record demonstrates to my satisfaction that the appellant-mother has "little or no regard for conventional standards, whether moral or social."[1] To uproot these children from the home of appellant's parents (where they have lived and been cared for over a period of seven years), a home well disciplined wherein the standards of behavior are "strikingly different from those espoused by appellant."[2] places these children in a situation where adjustment will be highly improbable, if not impossible. Both the majority and minority opinions favor a mother whose past behavior, in my opinion based on the evidence of record, has forfeited her rights as a mother. The best interests of these children, who are at a highly impressionable stage of life, have been subordinated to a misplaced adherence to the rights ordinarily granted a mother.

It is, therefore, with reluctance that I join with three of my colleagues in ordering a remand of this matter to the court below for an additional hearing, trusting that the Court of Common Pleas of Berks County will then consider the best interests of the chil-

---

[1] *See* report of Family Relations Division of the Superior Court of New Haven, Connecticut.

[2] *See* report of Family Relations Division of the Superior Court of New Haven, Connecticut.

dren rather than any presumptive or ephemeral right of the appellant.[3]

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. I believe the trial court's finding that "the welfare of the children demands that their mother have custody" was fully supported by sufficient and competent evidence. In reversing that finding of fact the Superior Court clearly intruded upon the province of the fact-finder and exceeded the proper scope of appellate review.

I am unpersuaded by the majority's attempt to characterize the Superior Court's direct invasion of the fact-finding province of the trial court as merely the drawing of different "deductions and conclusions of law" from appellant's promise of "reformation". What the majority ignores is the fact that appellant's promise of "reformation" was merely part of all the evidence that the trial court properly considered in making its finding. The weight and effect to be accorded the mother's testimony, as well as all the testimony in the case, was clearly for the fact-finder—here the hearing court.

In light of the trial court's finding, firmly supported by this record, that appellant should have custody of her children, I see no reason to prolong this matter by

---

[3] Strikingly illustrative of the appellant's attitude are the post-hearing facts: appellant, having been granted *limited* visitation rights with the children, continued such visitation *without limitation*, retained custody of the children beyond the visitation period and, by the placement of the children in school in Connecticut *under fictitious names*, has sought to conceal their whereabouts from the appellees, the children's natural grandparents, who over the past seven years have demonstrated their ability to take care of these children and whose love and affection of them have been so well evidenced. Such behavior on the part of the appellant would be rewarded if the conclusions reached in both the majority and minority opinions are to stand.

remanding for a further hearing on issues which have been completely reviewed and properly determined by the trial court. To remand is only to unnecessarily burden the judicial process with its added costs to all concerned and to further delay the finality of this litigation. The record here does not require a remand—it compels instead that this case come to an end. I would therefore reverse the Superior Court and affirm the trial court's order granting custody of the children to the mother.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissent.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. Anita Holland-Moritz Holschuh should be awarded custody of her minor children, Peter and Kai. There is no necessity for a further hearing in the Court of Common Pleas of Berks County. That Court's original order, awarding custody of the children to the mother was proper. No abuse of discretion has been established which would bar an affirmance of the lower court's original order.

During this litigation, one court or another has concluded that this mother (1) while completing her education made a wise decision about her children and demonstrated her concern for their welfare (2) is ready and able to resume her responsibilities as a mother (3) is not an unfit mother (4) is a woman of excellent education (5) is a woman of high intelligence, and (6) has always tried as best she could to provide for the welfare of her sons.

In spite of the recited judicial conclusions which remain unquestioned, this *woman* must suffer an additional hearing because—as a college student living alone and apart from her children—her life style does not pass the moral muster of the men making up the

majority. At the first hearing, this woman chanted one mea culpa—there is no need for another—except this *woman* may yet receive judicial clemency by a double atonement for violation of the double standard.