366 A.2d 286
**COMMONWEALTH ex rel. Diane D. TUCKER,
nee Salinger, Appellant,**

v.

**Laurence A. SALINGER and Barbara T.
Salinger, Appellees.**

Superior Court of Pennsylvania.

Submitted March 8, 1976.

Decided Nov. 22, 1976.

2

Richard S. Friedman, Harrisburg, for appellant.

Richard C. Angino, Harrisburg, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order denying appellant, Mrs. Diane Tucker, custody of her natural daughter, Lisa Salinger, six years of age. The child has lived most of her life with appellees, her maternal grandparents, with whom the child presently resides in Steelton, Dauphin County.

Appellant's first marriage on June 1, 1966 ended in divorce approximately two years later as a result of her husband's serious drinking problem. Subsequently, appellant had an affair with another man, became pregnant and gave birth to Lisa out of wedlock. After Lisa was born, appellant and her child lived with appellees, the parents of appellant, for two and one-half years until December of 1971, when appellant entered into her second marriage. Unfortunately, less than six weeks after the marriage, appellant realized her husband was unstable and subjected her to serious beatings. After several separations the parties were divorced in early 1973. During the turmoil of her second marriage appellant returned to her parents' home where the child, Lisa, continued to live during appellant's second marriage.

In July, 1973 appellant met Captain David Tucker, U. S. Army, whom she married on May 17, 1974. Captain Tucker is thirty-six years old and has been in the U. S. Army almost nineteen years. He experienced two unsuc-

cessful previous marriages of his own, although he was awarded custody of his two sons from his first marriage.

At the time of this appeal appellant, Captain Tucker, and Captain Tucker's two sons, ages 14 and 15, reside together in New Cumberland at the U. S. Army Depot where Captain Tucker is assigned, and where appellant has been employed as a secretary for approximately ten years. Their residence consists of three bedrooms; appellant and her husband have one, the two boys have one, and Lisa uses the other bedroom during visitation periods.

Appellees, parents of appellant, who are in their "late fifties," are healthy and alert. The grandfather participates with Lisa in sporting activities as well as reading to her and teaching her religion. The grandmother cooks, cleans, helps dress and care for Lisa. Lisa's aunt and uncle live next door to appellees and have two children of Lisa's age. Lisa's teacher testified that Lisa is one of her top students, gets along well with other children, and is emotionally stable and exceptionally mature for her age.

Following appellant's marriage to Captain Tucker on May 17, 1974, appellant took Lisa to live with her new family in New Cumberland, York County. Appellees instituted a habeas corpus action in York County seeking the custody of Lisa. After a two-day hearing, the Honorable Albert G. Blakey, III, in an opinion filed July 10, 1974 awarded custody to the grandparents, and Lisa was returned to them. Judge Blakey determined that because of the natural mother's past history of misconduct, the welfare of the child would be best served in continuing custody with the grandparents so long as appellant was afforded liberal visitation rights. No appeal was taken from Judge Blakey's order. Nine months later appellant instituted the present custody proceedings in Dauphin County where appellees and Lisa reside. This second custody hearing before Judge Warren of Dauphin

County was not de novo, but was limited to a development of the facts and present circumstances of the parties since the time of the prior York County hearing. The fact that appellant had only been married for less than two months at the time of the first hearing was justification for the lower court's re-evaluation of this custody matter on the basis of the presence or absence of sufficient "changed circumstances." Of course, the fact that appellant had been married to Captain Tucker for approximately eleven months at the time of the second hearing was not conclusive of a successful marriage, it was, however, sufficient to bring the facts of this case within those of *Auman v. Eash,* infra, where a marriage of much shorter duration was found sufficient to establish satisfactory present circumstances. On April 23, 1975 the Honorable Warren G. Morgan of the court below in Dauphin County denied appellant's petition for custody after a hearing held April 11, 1975, thus continuing the custody of Lisa with her grandparents, appellees. This appeal followed.

Essentially, the issue here is whether appellant, the natural mother, is entitled to the custody of her child of tender years.

■ ■ The appellate courts of this state have set forth general rules of law which govern custody matters such as the one presently before us. The following language of this court in the recent case of *Auman v. Eash,* 228 Pa.Super. 242, 323 A.2d 94 (1974) is especially pertinent:

> "Of paramount concern is the welfare and best interests of the child, which includes consideration of his physical, intellectual, moral, and spiritual well-being. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972). Subject to this rule is the general principle that a parent is entitled to the custody of his natural children. This right as a natural parent, while not absolute, has been de-

scribed by this Court as being so moving and cogent that as against a third party seeking custody it can be forfeited only by his conduct or other factors substantially affecting the child's welfare. *Commonwealth ex rel. Insalaco v. Delconte,* 201 Pa.Super. 354, 192 A.2d 750 (1963), aff'd. 413 Pa. 221, 196 A. 2d 353 (1964); *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa.Super. 73, 143 A.2d 665 (1958)."

Appellant specifically complains of the undue weight the lower court placed on her alleged past history of misconduct and unfitness as a mother to care for her child. In *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973) the custody fight was between the natural parents, each of whom had remarried. In that case the issue of past conduct was discussed as follows:

"[T]he trial of a child custody case is likely to become an exploration of the mother's past conduct in an effort by the father to show that she is unfit to care for the child. Past conduct may be forgiven, for '[c]ustody must be determined on the basis of facts as they exist at the time of the habeas corpus hearing [citations omitted].' *Commonwealth ex rel. Shipp v. Shipp,* 209 Pa.Super. 58, 60, 223 A.2d 906, 907 (1966). 'This principle has application even where there has been a serious lapse from moral standards by the mother, provided her past misconduct will not adversely affect the best interests of the child.' "

In *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974), this court again addressed itself to the issue of past misconduct. In reversing the lower court which had granted custody of a five-year-old child to the father, we indicated that the lower court had erred in basing its decision on the past misconduct of the mother:

"The lower court proceedings indicate what we believe to be an undue emphasis on the past 'harvest' of the

'poisoned and damaged crop' of this marriage. We may not be oblivious to the apparent unceasing friction between the parties, who married because of 'moral' duty rather than love. If the wife was somewhat neglectful of her household and motherly duties, who is to say whether the marital atmosphere did not contribute to or even cause the consequences? The inquiry below seems to have centered on the past conduct of the mother in resolving her present claim. This may not be done."

That the court below erred in its application of the above legal principles is evident from the following portions of its opinion:

"The question is whether with the passing of nine months we are yet ready to say that the child should be removed from the only home she has ever known and given to the petitioner [Appellant]. Our answer must be no. As harsh as it may seem, to continue to be denied the custody of her child, at least for now, *is the price this mother must pay for her past conduct.* We will not recite again those reasons that led Judge Blakey [first hearing July 10, 1974] to be so unconvinced of her fitness as to require her to further prove that she had reached a maturity and possessed such love for her child as would warrant her to claim the right of preference as a parent . . .. This child is one of the most happy, well-adjusted, intelligent youngsters we have ever seen . . . . Not only for her natural mother do we propose to change any aspect of the life that has produced this personality, except upon a firm and certain conviction that her interests will be at least as well served." [Emphasis added.]

Turning to the lower court's characterization of appellant's "unfitness," we find its language placing the legal burden on appellant unsupported by the evi-

dence and incorrect as a matter of law.[1] The lower court's reference to Judge Blakey's opinion and order from the previous custody hearing as authority for the proposition that a prior finding of appellant's unfitness had been rendered, was unwarranted.[2] To reach such a conclusion required the lower court in Dauphin County to overemphasize and unduly extend the first court's negative findings concerning appellant's past while giving little or no weight to the following positive findings made by Judge Blakey relating to appellant's present fitness as a parent:

> "The mother, of course, is favored by the fact that she is the parent and that we are dealing with a young child, which creates a presumption. The tender years doctrine has lost much of its impact in recent years, but it is still an important factor to be considered. The mother is much younger, 27. *The mother appears at this time to have established a stable home and environment. There is no dispute that she and her new husband have worked very hard at doing the best for Lisa while she has been with them, and we do not doubt that the child has adjusted and is being well cared for.* We believe the mother's present husband to be responsible and is, no doubt, a very positive influence on both his wife and this child." [Emphasis added.]

This portion of Judge Blakey's opinion comports more closely to our own factual and legal evaluation of this

1. While we cannot nullify the fact finding function of a hearing judge, we are not bound by a finding which has no competent evidence to support it. *Comm. ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587, J. 197, (1976). *Commonwealth ex rel. Grillo v. Shuster*, supra; *Commonwealth ex rel. Gifford v. Miller*, 213 Pa. Super. 269, 248 A.2d 63 (1968); and cases cited therein.

2. Upon stipulation by the parties, the opinion and order of Judge Blakey relating to the first custody hearing was made part of the record of the proceedings before the court below.

case.[3] For as we have stated above, the natural mother is favored under the law. She has a prima facie right to her child over any other person. *Commonwealth ex rel. Logue v. Logue,* 194 Pa.Super. 210, 166 A.2d 60 (1960). It is not her burden to establish this right, for it is the opponent's burden to establish that she must forfeit this right, which can "only be overcome in the most extreme of circumstances." *Commonwealth ex rel. Fox v. Fox,* 216 Pa.Super. 11, 260 A.2d 470 (1969). We do not have such circumstances here. Not only do the facts fail to justify a specific finding of appellant's present unfitness as a mother but, they also confirm that Lisa had adjusted well with appellant and appellant's new family unit in which she would be placed. Therefore, this change would not involve a "wrench of significant proportions" as was in the case of *Auman v. Eash,* supra.

Where the *Auman* case involved a natural father seeking custody of his six-year-old son from his son's stepfather,[4] the instant case involves a natural mother seeking custody of her six-year-old daughter from her daughter's grandparents. In *Auman,* the child's natural father was described as follows:

"Joseph Auman was also shown as being able and willing to provide a satisfactory home for Timothy. He has a steady job which he has held for a long time and his apartment, though not as spacious as George Eash's mobile home where Timothy has resided, would accommodate another little boy. His new wife, who has two children of her own, expressed eagerness to care for Timothy. The major challenges to the lower court's award of custody to this father center on his

3. In child custody proceedings, the scope of review of the Supreme Court and of the Superior Court remains that of the broadest type. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972).

4. The boy's mother, Deborah, previously had died in an automobile accident.

suitability as a parent in view of his past conduct. Appellant points out that Joseph Auman has been married three times by the age of 29. *His first two marriages ended disastrously and his third is of such recent vintage that its future is unpredictable.* His relationship with Deborah, Timothy's mother, was stormy and he is accused of having at times failed to adequately provide necessities for her and the child. After his divorce, he saw virtually nothing of Timothy, primarily because Deborah was emotionally distraught about their relationship and would not permit him to visit the child. He contributed nothing to Timothy's support after her remarriage." 228 Pa.Super. at 244–45, 323 A.2d at 96. [Emphasis added.]

In spite of these facts, and in spite of the fact that the child considered George Eash to be his father so that removal of the child from the Eash home would "undoubtedly be a wrench of significant proportions," especially since Mr. Eash had provided a good home for the boy for most of his life, this court nevertheless upheld the decision of the court below finding no reason sufficiently compelling to mandate depriving the natural father, Mr. Auman, custody of his child.

"Although the father was accused of misconduct and neglect to care for his previous family, testimony on the record supports the hearing judge's conclusion that his *present circumstances are satisfactory and he is not unfit as a parent.*" 228 Pa.Super. at 246, 323 A.2d at 96.

It is also significant in the *Auman* decision, that the court found Mr. Auman's marriage of four and one-half months sufficient, *inter alia,* for the purposes of establishing satisfactory *present* circumstances. Thus, we find support for a similar determination where, at the time of the custody hearing in the instant case, appellant had been married to Captain Tucker for approximately eleven months.

Finally, our Supreme Court has decided an additional case in favor of a natural mother on facts far less persuasive of that result than are the facts in the instant case. In *Commonwealth ex rel. Holschuh v. Holland-Moritz,* supra, a natural mother sought the custody of her two boys, ages 11 and 12, from her parents, with whom the children had resided for most of their lives. In that case, the Chancellor awarded custody to the mother and on appeal we reversed on evidentiary grounds, continuing custody with the grandparents. The Supreme Court, with one justice concurring in the result and three justices dissenting, remanded the case for further proceedings in order to correct the evidentiary deficiency, but with the strong implication that the mother should be granted custody. In fact, the three justices dissenting did so solely on the ground that they felt a remand was unnecessary and would have awarded custody to the mother directly. The mother in *Holschuh* was thirty-four years old and unmarried, having been divorced from the children's father since 1966. She admitted to several affairs since her divorce and to the fact that she was, at the time of the hearing, living with a male graduate student. The Supreme Court noted however that there was no specific finding that the mother was unfit, in spite of the grandparents' vigorous argument that she was unfit. The evidence in *Holschuh* further revealed that if the children would be placed with their mother they would be exposed to a radically different life style from that which they were accustomed and would be taken from an environment which was admittedly a good one and placed in a situation where at least one child did not want to live with the mother.[5] In spite of all these, and other factors weighing against the mother, the Supreme Court

5. In the instant case, however, we note that Lisa has not expressed a desire to remain with appellees to the exclusion of appellant. To the contrary, Lisa testified before the lower court that she considers appellant and Captain Tucker to be her parents referring to Captain Tucker as "Daddy."

implicit in its remand for additional evidence, favored an award of custody to the mother stating, *inter alia:*

"[A] mother should not be deprived of custody of her children merely because a better home in physical aspects, or a higher standard of living can be provided elsewhere. *Commonwealth ex rel. Levinson v. Levinson,* 162 Pa.Super. 563, 59 A.2d 625 (1948)."

Accordingly, after careful evaluation of all factual circumstances and legal precedent, we reverse the order of the court below and award custody of Lisa to her natural mother, appellant. We hasten to mention, however, that custody awards are not considered permanent adjudications and, therefore, remain subject to change in accordance with the circumstances, since the prime concern of the court is the welfare of the child. Accordingly, if circumstances warrant that a change be made in the future, an appropriate court will be available for re-evaluation. *Commonwealth ex rel. Dinsmore v. Dinsmore,* 198 Pa.Super. 480, 182 A.2d 66 (1962). In the meantime we instruct the court below to effectuate liberal visitation rights to appellees, the child's natural grandparents, who over the past years have demonstrated their love and affection for this child.

Case reversed with a *procedendo.*

VAN der VOORT, J., concurs in the result.

PRICE, J., files a concurring opinion in which HOFFMAN and SPAETH, JJ., join.

PRICE, Judge (concurring):

Although I agree with the result reached by the majority, I cannot join, nor can I agree with the conclusion the majority reaches by the use of the tender years doctrine. The majority concludes that the natural mother has a prima facie right to her child over any other person (majority opinion 244 Pa.Super. 9, 366 A.2d 290, and

14

that it is her opponent's burden to establish that she must forfeit this right. With that language I most strongly disagree and therefore find it necessary to write this opinion.

The majority's reliance on *Commonwealth ex rel. Logue v. Logue*, 194 Pa.Super. 210, 166 A.2d 60 (1960), and *Commonwealth ex rel. Fox v. Fox*, 216 Pa.Super. 11, 260 A.2d 470 (1969), to my view is misplaced. Since those cases, the Pennsylvania Supreme Court has held the tender years doctrine to be merely the vehicle through which decision ". . . may be reached where factual considerations do not otherwise dictate a different result." *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 109, 296 A.2d 625, 627 (1972). And this Court has more recently reinforced this principle. In *Commonwealth ex rel. Williams v. Williams*, 229 Pa.Super. 327, 324 A.2d 540 (1974), we said:

> "In awarding custody, the primary consideration is always the best interest of the child. See, e. g., *Commonwealth ex rel. Mitchell v. Mitchell*, 186 Pa.Super. 347, 142 A.2d 304 (1958). In determining the best interest of the child, for many years the courts of this Commonwealth have applied the principle of law that has come to be known as the 'tender years' doctrine. See, e. g., *Commonwealth ex rel. Ackerman v. Ackerman*, 204 Pa.Super. 403, 205 A.2d 49 (1964). However, always paramount are the child's physical, intellectual, spiritual and emotional well-being and all conflicting considerations, including the 'tender years' doctrine, will be subordinated to these matters. *Commonwealth ex rel. Thomas v. Gillard*, 203 Pa.Super. 95, 198 A.2d 377 (1964).

The Pennsylvania Supreme Court has held the 'tender years' doctrine to be merely a vehicle through which a decision respecting an infant's custodial well-being may be reached where factual considerations do

not otherwise dictate a different result. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972)."

*See also Davidyan v. Davidyan*, 230 Pa.Super. 599, 327 A.2d 145 (1974); *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Pruss v. Pruss*, 236 Pa.Super. 247, 344 A.2d 509 (1975); *Russo Appeal*, 237 Pa.Super. 80, 347 A.2d 355 (1975).

There are many cases in which determination of the child's best interests has led to an award of custody to someone other than a parent. See cases cited in *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 at n. 7 (1974).

Although great consideration is due a natural parent's interest in having her child, a presumption must never interfere with determining what is in fact in the child's best interests. *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973).

I believe the majority, therefore, places reliance upon a doctrine that does not create a prima facie right in a mother and does not shift any burden of proof.

I agree, however, under our duty to give broad review to custody cases that, in reliance upon the evidence, and the other principles of law cited and used by the majority, that the order of the lower court should be reversed with a *procedendo*.

HOFFMAN and SPAETH, JJ., join.