380 A.2d 478

**COMMONWEALTH ex rel. Joanne M. SCHALL**

v.

**Dennis B. SCHALL, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.
Decided Dec. 2, 1977.

Donald S. Himmelreich, Easton, for appellant.

Salvador J. Salazar, Northampton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal by a father from the lower court's order awarding custody of a four year old boy to his mother. The mother, appellee, filed a habeas corpus petition to obtain custody of the child on July 31, 1975. On August 28, 1975, an initial hearing was held and temporary custody was awarded to the father, with visitation rights by the mother. A second hearing was held on December 3, 1975, and an order was entered maintaining the status quo. Legal argument was had on February 3, 1976, and on March 31, 1976, the lower court granted the petition for habeas corpus and awarded custody to the mother. This appeal followed.

In a child custody case the hearing judge's inquiry should be comprehensive and searching, and his decision supported by a full discussion of the evidence. *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). Where the hearing judge has failed to comply

with these requirements, we have not hesitated to remand. *Id.* Where, however, the hearing judge has complied with these requirements, we have consistently held that we must defer to his findings. *Commonwealth ex rel. Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977) ("absent an abuse of discretion, his decision will not be reversed"); *In the Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976) ("we must defer to his findings"); *Clair Appeal,* 219 Pa.Super. 436, 281 A.2d 726 (1971) ("must always give great weight to [judge's] opinion"); *Commonwealth ex rel. Doberstein v. Doberstein,* 201 Pa.Super. 102, 192 A.2d 154 (1963) ("surely should remain in [judge's] discretion"); *Commonwealth ex rel. Dinsmore v. Dinsmore,* 198 Pa.Super. 480, 182 A.2d 66 (1966) ("should give great weight to the opinion of the hearing judge . . . [who] is in a much better position . . . .").

■ In the present case the hearing judge, President Judge Clinton Budd PALMER, has complied with the requirements that we have imposed, for he has filed a substantial opinion in which he summarizes and discusses the evidence and carefully explains the reasons for his decision to award custody of the child to the mother.[1]

■ Despite our confidence in the hearing judge's factual findings, we are nevertheless unable to make an appropriate review of his decree. In his opinion the hearing judge relied explicitly on the "tender years" presumption. After he wrote his opinion, the Supreme Court in a plurality opinion indicated that in view of the concept of the equality of the

1. We recognize that the dissenting opinion disagrees with the hearing judge's findings. Having carefully examined the record, however, we are not persuaded that the hearing judge's findings are not supported by the record. We consider it unnecessary to elaborate upon this conclusion beyond observing that if an appellate court chooses to reject a hearing judge's findings, it has a double obligation: It should demonstrate, by reference to the record, first, why the judge's findings are not supported, and second, why its substituted findings are supported, by the record. The dissenting opinion undertakes neither of these demonstrations, but rather substitutes its own appraisal of the witnesses' credibility, while failing to discuss portions of the testimony.

sexes, the "tender years" presumption retained no vitality, even as only a procedural device by which to allocate the burden of proof. Thus Mr. Justice NIX said:

> Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of "presumptions." Instead, we believe that out courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case then before the Court.
>
> *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 300, 368 A.2d 635, 640 (1977).

Following this lead, we have now held that the "tender years" presumption has been "eliminated." *McGowan v. McGowan,* 248 Pa.Super. 41, 44 n. 1, 374 A.2d 1306, 1308 n. 1 (1977).

Given this change in the law, in fairness both to the father and mother, not to mention the child, we must remand so that the hearing judge may consider whether in light of *Spriggs* and *McGowan* his decision would be different. *See Lough v. Charney,* 250 Pa.Super. 314, 378 A.2d 951 (1977). We expect that he will explain the result of this consideration by filing a supplemental opinion, after which the parties may request further argument before us.

Case remanded for proceedings consistent with this opinion.

VAN der VOORT, J., files a dissenting opinion.

JACOBS, J., dissents and would affirm.

VAN der VOORT, Judge, dissenting:

This is an appeal by an appellant father from an Order of Court awarding custody of his four year old son to the appellee mother. The action was instituted in the lower court by the mother's action in filing a habeas corpus petition to obtain custody of the child, on July 31, 1975. On August 28, 1975, the initial hearing on the petition was heard and temporary custody was awarded to the father, with visitation rights by the mother. A second full hearing

was held on December 3, 1975, and an order was entered maintaining the status quo. Legal argument was presented on February 3, 1976, and on March 31, 1976, the lower court granted the petition for habeas corpus and awarded custody to the mother. This appeal by the appellant father followed.

In custody matters, our scope of review is quite broad and while we do not nullify the fact-finding function of the trial court, we are not bound by findings not supported by competent evidence. *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). Although we may accord the trial court's determination great weight (*Commonwealth ex rel. Rainford v. Cirillo*, 222 Pa.Super. 591, 296 A.2d 838 (1972)), we are not bound by deductions or inferences made by a trial court from the facts found. *Commonwealth ex rel. Bowser v. Bowser*, 224 Pa.Super. 1, 302 A.2d 450 (1973). Our paramount concern and the sole issue to be decided in custody proceedings is the best interests and welfare of the child. *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972).

In the instant case, the lower court, in essence, found both parents to be possessed of relatively equal fitness and ability to have the custody of their minor son. However, the court, in recognition of then existent precedent (i. e., *Commonwealth ex rel. Grillo v. Shuster, supra.*), placed reliance upon the "tender years" doctrine or presumption, which held that in cases where the best interests of the child would be served equally well by placement with either parent, the custody should be awarded to the natural mother. Since the date of the lower court's action, our Supreme Court, by a plurality opinion has severely criticized the tender years presumption. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977). In our review of this case, I see no need for an extended discussion or analysis of the application of that doctrine however, as the record amply supports the contention of the appellant that the best interests of the child would be served by granting his custody to his father.

In our determination of what the best interests of the child are we consider the following factors quite significant in our review: (1) the age of the child; (2) the care and affection exhibited toward the child by the contesting parties; (3) the moral conduct of the parties; (4) the occupation of the parties and provisions for "caretakers"; (5) the residences of the parties. See, for example, *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974). Custody must be determined on the basis of these factors as they exist at the time of the habeas corpus hearing. *Commonwealth ex rel. Shipp v. Shipp*, 209 Pa.Super. 58, 223 A.2d 906 (1966). At the time of the hearing in the instant case, the circumstances applicable to the appellee mother must be evaluated as considerably less favorable for the four year old child's interests than those of the appellant father.

The hearing record shows that the child resided with both parents until July, 1975, when the appellee mother departed from the family home, in a trailer park in Northampton, Pennsylvania, leaving her son with his father. At the time of her departure from her family and on two occasions prior to that date, the appellee had traveled to another locale to spend time with a male friend. At the hearing, she admitted to having spent a three day period with the same male friend in a motel. After the separation, the appellee resided in her sister's one bedroom apartment with her sister and her brother, who was, at the time, absent without leave from the Marine Corps. Thereafter, in September, 1975, the appellee moved out of that apartment and into a mobile home with her sister where she resided for only three weeks. In October, 1975, the appellee again moved, this time to another mobile home, where she took up residence, this time with her male friend. This individual, it was disclosed, has a criminal record involving a conviction for statutory rape. At the time of the hearing, in December, 1975, it was also disclosed that the mobile home in which the appellee and her paramour resided was for sale and that appellee would have to vacate the premises if it was sold. The appellee, at the time of the hearing was employed on a full-time basis,

working 46½ hours for 5½ days each week. She testified that if awarded custody, she planned to place her son in a local day care center during her working hours, from 7:15 a. m. to 5:15 p. m.; however, she testified she had not completed arrangements for such care, and did not know what this would cost. Witnesses testified that prior to her departure from her family home, the appellee had often let her son play outdoors in very inadequate clothing. Also, she failed to maintain sanitary conditions in her home, including leaving pet waste on the floors.

All of these factors leave me with considerable doubt about the fitness of the appellee mother to provide the proper care for her son or to insure that his best interests be served. Since abandoning her family, she had, at the time of the hearing, adopted a nomadic life style, while associating herself with individuals whose propriety and moral character were questionable. Her plans for the daily care of her son while she is working were indefinite, and while not reprehensible, are certainly not assured to be beneficial to him at this early and important stage in his childhood.

The appellant father, at all times relevant to these proceedings, resided in the same trailer home from which his wife had departed. He is steadily employed, working 52½ hours per week on a five day per week schedule with weekends off. During the hours the father is working, he leaves his son in the care of the child's paternal grandparents, who have a farm residence and provide constant care, attention, and family love to the child while his father is at work. No evidence in the record suggests factors of instability or questionable relationships on the part of the father, similar to or equating with those exemplified by the mother.

In light of all of the above, and the record as a whole, conclude that the interests of the child would best be served by awarding custody to the father. The record of the habeas corpus hearing indicates that the child, with his father, will be in a more stable and wholesome atmosphere than that which could be projected if the appellee mother were awarded custody.

In my opinion, the record is complete and unquestionably and overwhelmingly mandates an award of custody to the appellant father in order to best serve the interests of the child. I must respectfully dissent from the decision to remand this case in view of the obvious delays inherent in such a procedure and the facts of record which I believe clearly require that the child's father regain custody as soon as possible.

I would reverse the order of the lower court.